AMOS W. WALKER

*v.*

REUBEN R. FREEMAN, Exr.

*Opinion filed April 20, 1904.*

1. APPEALS AND ERRORS—*when party cannot complain that the jury were left to decide matters of law.* One cannot complain that the question whether certain letters in evidence constituted a new promise to pay a note was left to the jury by plaintiff's instructions, where he obtained instructions and special findings upon the same theory.

2. LIMITATIONS—*whether letters constitute new promise is a question of law.* Whether the letters in evidence from the defendant to the payee of the note and his agent constitute, of themselves, a new promise to pay the note is a question of law for the court.

3. SAME—*a new promise to pay need not be express.* If the debtor clearly admits the debt to be due and unpaid, and uses language indicating an intention to pay it, a new promise to pay is implied.

4. SAME—*what does not render express promise conditional.* An express promise by the debtor to "pay every cent" he owed the payee of the note, is not rendered conditional by other statements in the letter making excuses for delay and expressing inability to pay at present and the necessity for giving other debts the preference.

*Walker* v. *Freeman,* 110 Ill. App. 404, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. W. BURKE, Judge, presiding.

JOHN H. BRADLEY, for appellant.

ALDEN, LATHAM & YOUNG, for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This was a suit upon a promissory note executed by appellant, dated March 15, 1883, payable one day after date. The declaration consisted of the common counts, with affidavit of merits attached. The plea of the Statute of Limitations and a plea of set-off were pleaded. To the plea of the Statute of Limitations appellee replied alleging a new promise in writing.

The main question presented by this record is whether certain letters written by appellant contain sufficient admissions by the debtor of a new promise to pay to remove the bar of the statute. The material portions of the several letters are as follows:

In a letter of date February 23, 1890, written to the agent of the holder and payee of the note in question, appellant says: "Please give me the principal of the note Mr. Koontz holds against me, date, per cent, and when it was due. Please state these particularly. I had hoped to begin paying interest on his note, at least, but now that I have yours to pay I will have to delay his. Let me hear soon."

On January 31, 1891, appellant wrote as follows to the agent, John M. Stroup, at Sedalia, Ohio: "Dear Sir— I have been expecting to write you for some time concerning my indebtedness to Mr. Koontz, and have only delayed because I have not seen my way clear to pay even the interest on the note and keep along with the expenses of my little family, living being very high in Chicago and suburbs. I did write you a long while ago wishing to renew my note, giving new note for principal and interest, less a fair remuneration for looking after rents and the farms generally. I now write you, friend Stroup, and ask you to arrange the matter with Mr. Koontz, as he is getting old, and such matters, I presume, annoy him. I will pay every cent I owe him, if I live, but I must have time. I now can see my way clear to pay at least the interest for next year, and possibly some on the principal, if I am not disappointed in my school prospects for next year. Since leaving Windsor I have relied on my own resources and have only been able to keep up current expenses, having to compete with old men teachers here, and my salary, in consequence, being small. But my prospects are brightening, and I want to arrange to meet my note just as fast as I can. Had I not been disappointed in my expectations

with father I would have met this note before, but as it is I must pay it along now just as I can save from my salary. Father and I, however, are not estranged. Now, this is what I want to do and what I want to get Mr. Koontz to do: I want to give a new note for amount due first of February, having five years to pay it in, bearing seven per cent interest, I agreeing to pay interest annually and as much on note as I can. I feel that by that time I can pay it off. Now, let the new note include principal of old note and interest up to February 1, 1891, less amount due me for looking after matters. Do you think $50 a year is unreasonable? I have an account of all moneys received and paid out, kept at the time, but cannot come upon it yet, but I am sure it is in my papers somewhere. But you will remember we settled up in the spring of 1883, some time. Do urge upon Mr. Koontz not to feel that I have through choice delayed making any provisions to meet my note. Nothing will please me better than to be able to meet my note against me, as I hope to, but I have had a pretty hard time, but I'll come out all right."

On March 18, 1892, appellant wrote as follows to Mr. Koontz: "Yours of recent date forwarded to me, and I am sorry, and even mortified, not to be able now, and long before, to settle up matters with you. I have been teaching for the last few years, but live as economically as we can I don't get ahead any yet; but I do hope to get an increased salary in the course of a year or eighteen months, if not greatly disappointed. I had hoped all the time to get an advanced salary so as to begin paying on the note, but I have not been able to do so. * * * It is my purpose to begin paying you off as soon as I can, and as soon as I get this borrowed money paid back I will put my first savings toward paying you. I do trust you will not be greatly grieved by being kept out of payment so long, but it is all I can do now."

The note sued on was made at Shelbyville, Illinois, March 15, 1883, and was for $1199.25, due one day after date, with interest at the rate of eight per cent per annum. The evidence discloses that it was in a settlement between appellant and appellee's testate. It appears that Koontz, the payee, owned land in Shelby county but lived in Ohio; that he made appellant his agent to lease and manage the lands, and that appellant acted as such agent from 1874 to 1883; that it was his duty to manage and rent the lands, pay the taxes and collect the rents and pay them over to Koontz. The evidence tends to show that appellant failed to pay the taxes and failed to do other things that were incumbent upon him in the line of his agency, and that he also failed to remit the amounts that he collected, but appropriated them to his own use. In 1883 one John M. Stroup, the son-in-law and agent of Koontz, the owner of the land, came out to Illinois and made a settlement with appellant of the moneys that were due Koontz, and at which the balance of $1199.25 mentioned in the note was found to be due Koontz and the note given. The note was never paid, nor any part of it, and the suit at bar was brought. Pending the suit the payee died, and appellee, Freeman, as his executor, was substituted as plaintiff.

The case has been tried four times before a jury in the circuit court of Cook county, and three appeals have been prosecuted to the Appellate Court. (67 Ill. App. 309, 94 id. 357, and 110 id. 404.) The principal controversy in all the trials has arisen over the proper construction and legal effect of the letters above set forth. The circuit court in the trial from which this appeal is prosecuted seems to have entertained the view that the effect of these letters, and their construction, were matters for the determination of the jury. Under this view the court instructed the jury at length by instructions stating the law applicable to such case, and explained to them all the elements necessary to constitute a new

promise within the meaning of our statute.　Notwith-standing the death of the payee of the note the appellant was allowed to testify as to his set-off.　The note and interest, at the time of the trial, amounted to $3008.52, and the jury found for appellee $1321.11, thus allowing nearly $1700 of set-off, which consisted of the services and expenses of appellant in and about the agency in looking after the farms for the period for which the rents accrued that the note in question was given for. On appeal to the Appellate Court the judgment of the circuit court was affirmed.　Appellant prosecutes this appeal, and complains of the action of the trial court in the giving and refusing of instructions.

It is first complained that the court should have construed the letters in evidence and have directed the jury as to their legal effect, and told them, as a matter of law, whether the letters were sufficient to raise the new promise required by the statute.　The letters were the only evidence of the new promise.　In this contention we think the position of appellant is sound.　The letters were admitted to have been written to the payee of the note and his agent and to have been in relation to the note sued on, and, so far as the liability upon the note was concerned, the only question was whether the matters contained in the three letters did constitute a new promise, and was undoubtedly a question of law. (*Ennis* v. *Pullman Palace Car Co.* 165 Ill. 161; *Kamphouse* v. *Gaffner*, 73 id. 453; *Belden* v. *Woodmansee*, 81 id. 25; *Illinois Central Railroad Co.* v. *Foulks*, 191 id. 57; *Kendall* v. *West*, 196 id. 221.)　But appellant is in no condition to complain of this error, as he asked, and the court gave, instructions upon the same theory and asked the court to submit to the jury five special findings.　By the first the jury were asked to give the date of the letter from which they found the written promise, if they found one.　By the second the jury were asked, if they found a new promise, to give the language or that part of any letter from

which they found the same. By the third the jury were asked, "Do you find that there was a written promise by the defendant to pay the note in the letter of date February 23, 1890?" The fourth and fifth requests for findings were in the same language, and related to the letters of date January 31, 1891, and March 18, 1892, respectively. All these findings, except the second, the court submitted as requested.

The appellant offered a number of instructions to the effect that neither of the above letters contained an unconditional or unqualified promise to pay the note, and that there was not sufficient in either of the letters from which such promise could be implied. These instructions were refused by the court, and we think properly. To take a case out of the statute the new promise need not be an express promise to pay. If the debtor clearly admits the debt to be due and unpaid and uses language of an intention to pay, it will be considered an implied promise sufficient to take the case out of the statute. (*Wooters* v. *King,* 54 Ill. 343; *Ayers* v. *Richards,* 12 id. 146; *Parsons* v. *Northern Illinois Coal and Iron Co.* 38 Ill. 430; *Mellick* v. *DeSeelhorst,* Breese, 221.) If the debt be identified with such certainty as will clearly determine its character and show a present unqualified willingness and intention to pay, that is sufficient to constitute the new promise, within the requirements of our statute. *Keener* v. *Crull,* 19 Ill. 189.

The contention that whatever promise may be found in these letters is a conditional one we are unable to accede to. The most that can be said as to a condition is, that appellant, in the letter of January 31, 1891, claims that there is an amount that is unliquidated and that is due him for services as agent, which he is entitled to have set off or deducted from the note, and suggests that $50 a year for the time he was agent would be a reasonable amount. This supposed condition was not upon the theory that the note was not to be paid or that appel-

lant's promise to pay the note was upon the condition that such deduction would be acceded to by the payee of the note, but that expression is found in connection with an offer to give a new note for the debt, less the amount that should be agreed upon as a just allowance to appellant for his services. Preceding that expression is the express declaration found in another part of the letter, that appellant would pay every cent he owed the payee of the note, and that he could see his way clear to pay at least the interest for the next year, and possibly some of the principal. Following the expression with reference to giving the new note in that letter, appellant requests Mr. Stroup, the agent, to urge upon the payee of the note the fact that the delay in the payment of the note has not been through the choice of appellant, and that nothing would please appellant better than to be able to meet the note, and that appellant would come out all right.

There is no force in the argument that the statements by appellant, in substance, in his letters that he will pay when he is able, and that he expects soon to have an increase in his salary, and that he had other indebtedness to which he felt it his duty to give preference and which he would first pay before paying the note in question, made the promise conditional. Such promises are to be performed in the future. If appellant had the money and was ready and able to pay instead of making promises to pay, he would have paid and ended the matter; but he was confessing his inability and declaring his desire and intention to pay, and simply because he was unable, at the time of the promise, to carry out that intention because of the smallness of his salary or the extent of his other obligations, and so stated, his promise did not become conditional. *Horner* v. *Starkey*, 27 Ill. 13; *Sennott* v. *Horner*, 30 id. 429; *Rolf* v. *Pillond*, 16 Neb. 21; *Devereaux* v. *Henry*, 16 N. Y. 697; *McNear* v. *Roberson*, 39 N. E. Rep. 896; *Coffin* v. *Secor*, 40 Ohio St. 637.

Appellant also contends that only the letter of January 31, 1891, can be looked to in determining whether a new promise was made. All these letters related to the same note, as appellant testifies, and were therefore upon the same subject matter, and although not so proximate in time as usually happens in such case, yet in determining whether a new promise was made and whether that promise was unconditional we think all the letters should be taken into consideration. In the first he asks for a particular description of the note that he owes, and states that he hoped to begin paying interest upon that note, but because of a debt that he owes Stroup he is compelled to delay. In the second he seems to have received the information he wished, and there repeatedly makes the declaration of his intention to pay, and in the third, to the payee, we find a clear acknowledgment of the debt, the expression of contrition and mortification by appellant that the matter had so long remained unpaid, and his declaration, "It is my purpose to begin paying you up as soon as I can, and as soon as I can get this borrowed money paid back I will put my first savings toward paying you." We are unable to see why all these letters may not be looked to, and if in any one of them, or all of them, there is present sufficient language from which a clear and unqualified promise to pay the debt may be found, such promise could be given effect and appellant be bound thereby, as all of said letters were the writings of appellant.

As we have said, the court should have construed these letters, and, as we now hold, should have instructed the jury that they did contain an unqualified promise to pay the debt, thereby removing the bar of the statute. If appellant had not become a party to the error in failing to so instruct the jury, it would still be doubtful if there is reversible error in the case. The jury found just what the court should have instructed them to find, and in the allowance of the set-off to appellant and the ad-

mission of testimony was more favorable to him than he was entitled to have. There should be an end to this litigation.

No complaint is made of instructions affecting the set-off, and appellant received all the benefit under that plea that he was entitled to.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*