THE PEOPLE *ex rel.* SHEILA HOLLAND, Plaintiff-Appellee, *v.* DAVID DeMICHAEL, Defendant-Appellant.

First District (5th Division)   No. 78-2160

Opinion filed December 28, 1979.

Wisch and Dyer, of Chicago (Dinah B. Dyer, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Paul B. Biebel, Jr., Stuart D. Gordon, and Randye A. Kogan, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This is an action brought by the State pursuant to the Paternity Act (Ill. Rev. Stat. 1977, ch. 40, pars. 1351 through 1368), seeking to establish that defendant is the father of Sheila Holland's child and to obtain support payments for the child. Defendant admitted paternity and the case proceeded to a bench trial on the support issue. Defendant was ordered to pay child support and hospital expenses pertaining to the child's birth and to pay Ms. Holland's private attorney his fees and costs. On appeal, defendant seeks a reversal and remand of the case for a new hearing, contending that: (1) the trial court committed numerous errors which deprived him of a fair hearing, and (2) the award of attorney's fees and costs to Ms. Holland was improper. We affirm in part and reverse in part.

Ms. Holland testified regarding the expenses surrounding the baby's birth. The baby was born on December 17, 1977, at St. Joseph's Hospital in Chicago, and Ms. Holland's visits to the hospital clinic for prenatal care began in March 1977. The bills for those visits totaled $572.84, and prenatal testing was $60. It was stipulated that the hospital costs for the

birth of the baby were $1057. Following the baby's birth, Ms. Holland had hired a home nurse for two weeks, for a cost of $375. The baby became sick shortly after he was born and was hospitalized between March 28 and April 10, 1978. The cost of the hospitalization itself was $2207.88 and tests an additional $77.25. Ms. Holland had also spent $990 for baby furniture and $200 for the baby's layette.

Ms. Holland also testified that she spent approximately $135 each week for the baby's food, diapers, clothing and laundry and that the baby's monthly medical expenses were $25. In addition, she expended monthly $384 for rent, $32.50 for electricity and $20 for telephone services. She was not employed at the time of trial but had spent $125 per week for a babysitter while she was working.

Ms. Holland and defendant had lived together until about six months before the baby was born. Both were employed at the time, Ms. Holland as a bookkeeper earning between $5 and $6 per hour. Ms. Holland further testified that she had borrowed $900 from her mother and $2000 from the South Shore Bank. She had an outstanding balance of $1300 due on her Visa credit card, which included some of her hospital expenses, and also had balances due on various other charge accounts. She admitted that she had received over $1000 in checks from defendant after he had moved and after the baby was born but denied that they had agreed that defendant would pay her $100 per month for child support. The checks, she said, were to repay loans she had made to defendant while they were living together and defendant was attending school. On redirect examination she testified that she had written numerous checks to defendant while they had lived together and that defendant had endorsed those checks to his creditors.

Defendant testified that he and plaintiff had had a "loose" financial arrangement while they lived together. Shortly after he had moved out, in May or June of 1977, he and Ms. Holland had a conversation regarding her pregnancy, and he agreed to pay $1000 for her hospitalization. In another conversation, after the baby was born, he offered to pay her $100 per month as child support. He testified that he had given Ms. Holland $350 in support payments, the last one being made in April 1978, and that he had written her $1022 in checks for her hospitalization.

Defendant was 23 years old at the time of the trial and was married and had no other children. He was the "purchasing agent and/or administrative vice-president assistant" at Oil Dri Corporation and received a net salary of $1128 each month. He and his wife lived in a condominium which he owned. Defendant's wife also worked and owned her own condominium in the same building. Defendant testified that his monthly expenses were $1115.93, which included $281.81 for the mortgage and assessment on his condominium, $304.12 on various credit

cards and loans, $30 for telephone service, $40 for electricity, $25 for bus fare, $250 for food and $100 for miscellaneous expenses. In addition, he owed the Internal Revenue Service $1786 plus interest, but no payment plan had yet been established for repaying that amount. Defendant also testified that his wife makes her own payments on her condominium and does not contribute to the payment for defendant's condominium. She also has her own bank account and pays her own credit bills, although she sometimes gives defendant money to deposit in his bank account.

During closing arguments, Ms. Holland's counsel requested the court to award the costs incurred in pursuing the action and the fees due him from his client. After closing arguments, the trial court on December 12, 1978, entered an order against defendant providing: (a) support of $225 a month; (b) judgment in favor of Ms. Holland against defendant for $1000 for medical bills; and (c) judgment in favor of her attorney for $1000 for attorney's fees and $371 for costs.

OPINION

## I

Defendant first contends that he was denied a fair trial, maintaining that the trial court committed numerous errors in the conduct of the trial by restricting cross-examinations, assuming the role of an advocate, failing to understand or consider the defense theory and prejudging the case on matters not in evidence.

## A

Defendant maintains that his counsel was frustrated in his efforts to cross-examine Ms. Holland, thus depriving him of his right to effective cross-examination. Specifically, defendant claims that the court limited the time available for cross-examination and then interrupted questioning when it became productive.

The record of the proceedings discloses otherwise. Defense counsel began his cross-examination of Ms. Holland late in the afternoon on a Friday. A while later the case was put over until Monday morning. When court resumed, other matters pertaining to the trial were discussed between the court and counsel for both parties. Defense counsel estimated that he would need about two hours to cross-examine Ms. Holland, and the court replied:

> "I don't think any person should be submitted continuously for two hours cross-examination. We will start and go at fifteen minutes. At the time then we will recess for a little while, then you will go for fifteen more minutes. But we will allow you, if the questions are proper, to cross examine her for two hours."

Defense counsel then proceeded with the cross-examination. The court recessed for lunch after which cross-examination resumed once again. There were no recesses taken for 15-minute intervals and, contrary to defendant's assertion, the three instances which he claims interrupted the momentum of his cross-examination of Ms. Holland did not have that effect at all. In the first occurrence, defense counsel himself suggested a recess after the trial court asked the witness if she was all right. The witness responded that a recess was not necessary and cross-examination continued. The second interruption was a brief recess taken with the consent of defense counsel. The final instance cited by defendant occurred during redirect examination of Ms. Holland by her own counsel.

Clearly, Ms. Holland's cross-examination by defendant's counsel was not interrupted without his consent. Nor can we agree with his contention that the scope of cross-examination was unduly limited. The scope of cross-examination lies "within the sound discretion of the trial court and we cannot properly upset the exercise of that discretion unless there has been an abuse of discretion." (*Sweeney v. The Max A. R. Matthews & Co.* (1970), 46 Ill. 2d 64, 71, 264 N.E.2d 170, 173.) We find no abuse of discretion here.

B

Defendant next maintains that the trial court improperly considered evidence of his wife's income and assets in determining the amount of support. When defense counsel objected to questions asked about her income, the court said: "He has a duty to support his wife, so her financial situation is pertinent to him." Defendant waived his objection on that ground. No testimony was taken from defendant's wife, although she was asked the amount of her income after defendant stated that he could not recall what she earned and the parties agreed to stipulate to the amount. Defendant's objections to questions of what his wife did with her money were sustained.

While the financial status of defendant's wife is not relevant to his obligation to support the child, we believe that the actions of the court in the instant case were not improper. In *Edwards v. Edwards* (1970), 125 Ill. App. 2d 91, 259 N.E.2d 820, evidence of the plaintiff's present wife's income was allowed in post-divorce support proceedings. The court stated:

> "The financial status of plaintiff's present wife has no bearing upon the obligation of plaintiff to support his minor child. However, it is quite apparent that the trial court considered the financial circumstances and needs of plaintiff and of the minor child in light of all the facts surrounding both households. We cannot say that this was an abuse of discretion, but rather it was an

assessment of those matters which demonstrate clearly the effort to reach an equitable conclusion." (125 Ill. App. 2d 91, 96, 259 N.E.2d 820, 823.)

The evidence taken here was comparable to that allowed in *Edwards*, and we find that the totality of the evidence taken in the course of the entire trial shows a similar attempt to reach an equitable conclusion. Accordingly, we find no abuse of discretion.

## C

Defendant's next contention, that the trial court acted as an advocate in its questioning of defendant, is also unsupported by the record. When the quotations cited by defendant in his brief are placed into their proper context, it is readily apparent that the trial court did not "fire" questions at defendant in rapid succession. On the contrary, the entire colloquy reflects an attempt by the trial court to make some sense out of the figures to which defendant had testified. There were discrepancies in the totals and the cross-examination by Ms. Holland's counsel had been repetitive, resulting in the same answers. At one point, defense counsel agreed with the trial court's observation that the questions were repetitive and that the answers were already known. The trial court's questioning of defendant was no different from its questioning of plaintiff. The questions were put by the court in an attempt to make sure that it fully understood the testimony of the parties as to their financial status. They reflect an effort to clarify the testimony of the witnesses and as such are not an abuse of discretion. *Waters v. Chicago & Eastern Illinois R.R. Co.* (1973), 13 Ill. App. 3d 661, 300 N.E.2d 521; compare *People v. Santucci* (1962), 24 Ill. 2d 93, 180 N.E.2d 491.

## D

The essence of defendant's remaining contentions regarding the trial is that the trial court's judgment reflected its prejudice rather than a consideration of the evidence. We disagree.

According to the Paternity Act, parents of an illegitimate child are liable for its support, maintenance, education and welfare to the same extent as the parents of a child born out of a lawful marriage. (Ill. Rev. Stat. 1977, ch. 40, par. 1352.) However, the Paternity Act itself recognizes that the joint responsibility is not necessarily an equal one. It provides that, in determining the amount of support and maternity expenses to be charged to the father, the court "shall take into account not only his financial condition and circumstances but also the income and resources of the mother which are or may be available for the support of the child." (Ill. Rev. Stat. 1977, ch. 40, par. 1359.) In *Sullivan v. Sullivan* (1978), 57 Ill. App. 3d 958, 964, 373 N.E.2d 829, 833, the court stated:

"It is only equitable that a parent with a disproportionately greater income than the other bear a greater share of the costs of support, especially if it is the noncustodial parent who is earning greater income."

■■ Although *Sullivan* involved a great disparity in income between the parents, the principle is applicable here. The evidence showed that Ms. Holland was currently unemployed. When she was working, her gross salary was between $5 and $6 per hour or approximately $200 per week. Her take-home pay was about $140, out of which she spent $125 per week for a babysitter. Defendant's net income was $1128 per month. The personal expenses of both parents left little, if any, excess for the child's support, but it is evident that the defendant is in a better financial position.

There is nothing in the record to indicate that the trial court was granting Ms. Holland the right to refrain from working, nor can we accept defendant's assertion that the trial court indicated that Ms. Holland could "rely almost exclusively on [defendant's] money." Quite to the contrary, the court had admonished Ms. Holland that she could not afford to continue living in an expensive apartment and that she should not expect to rely on defendant to support her as well as the child.

■ The court must consider the totality of the circumstances in determining the amount of support payments (*cf. Riordan v. Riordan* (1977), 47 Ill. App. 3d 1019, 365 N.E.2d 492; *Edwards v. Edwards*), and the record indicates that that is what the court did in the instant case. Defendant's assessment of what the reasonable monthly expenses for the child's support should be is his own interpretation of the evidence and does not consider housing costs of any kind. Similarly, the trial court heard conflicting testimony regarding the payment of Ms. Holland's maternity expenses, and defendant's contention that the $1000 he paid her was for those expenses, rather than to repay a loan, is also his own conclusion, which is contrary to the trial court's findings. It was up to the trial court to weigh the testimony and we will not disturb its findings unless they are contrary to the manifest weight of the evidence (*People ex rel. Penrod v. Chicago Western Ry. Co.* (1959), 17 Ill. 2d 307, 161 N.E.2d 126) or reflect an abuse of discretion. (*Riordan v. Riordan.*) We find neither here.

E

■ Finally, we have examined the entire record of the trial and do not find evidence that the court reached its decision before hearing defendant's case. It is true that the trial court had suggested a settlement after the first day of trial, but that alone does not indicate prejudice. (See *People ex rel. Spicer v. Coleman* (1979), 72 Ill. App. 3d 631, 391 N.E.2d

46.) Moreover, the final order was lower than the figure suggested by the court and lower still than the amount originally sought by Ms. Holland. The record as a whole discloses that the court tried to maintain an evenhanded proceeding, in spite of both an occasional confusion in the manner in which both counsel attempted to present their evidence and a certain amount of tension between opposing counsel. We cannot say that the conduct of the trial was prejudicial or an abuse of discretion.

## II

Defendant additionally contends that the award of $1371 to counsel for Ms. Holland was improper. We note that this appeal was pursued by the State on behalf of Ms. Holland and that, because it has no legitimate interest in the fees to be paid her privately retained counsel, it did not argue the issue. Although notice of the appeal was served on private counsel, he did not appear or submit a brief to this court to protect his fees. Notwithstanding the absence of an appellee's brief, we will decide the issue on its merits, in accordance with the holding in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 345 N.E.2d 493.

■ The Paternity Act allows for the payment of reasonable attorney's fees upon the presentation of evidence (Ill. Rev. Stat. 1977, ch. 40, par. 1359), but it contains no provision which permits costs to be similarly assessed. The recovery of costs was unknown to the common law, and any allowance of costs must therefore be based on a statutory provision. Accordingly, the request for costs should have been denied. *People ex rel. Perz v. Schneemilch* (1967), 82 Ill. App. 2d 371, 227 N.E.2d 132.

■■ ■ In setting the amount for the award of attorney's fees, the trial court considered the representations of Ms. Holland's counsel as evidence of the amount due. However, counsel's statements were not under oath and they were made over defendant's continuing objection. Statements made in the course of argument are not evidence and serve to prejudice the opposing party's case. (See *Wellner v. New York Life Insurance Co.* (1947), 331 Ill. App. 360, 365, 73 N.E.2d 156, 159.) While that prejudice is less likely to occur in a bench trial than in a jury trial and an attorney's statements made after the close of all evidence have been allowed to establish fees, such statements should at least be subject to cross-examination. (See, *e.g., Christian v. Christian* (1979), 69 Ill. App. 3d 450, 387 N.E.2d 1254.) Defendant was afforded no real opportunity to cross-examine in the instant case. Furthermore, when the party who is to become liable for the fees specifically asks to be heard on the question, the trial court must grant such a hearing. (*Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680; *Jones v. Jones* (1964), 48 Ill. App. 2d 232,

198 N.E.2d 195.) Defendant having been denied a hearing on the question of attorney's fees, the order awarding those fees to counsel for Ms. Holland cannot stand.

### III

In conclusion, for all of the foregoing reasons, that portion of the order pertaining to child support and the payment of $1000 for Ms. Holland's maternity and confinement costs is affirmed. That part of the order awarding fees and costs to counsel for Ms. Holland is reversed.

Order affirmed in part and reversed in part.

SULLIVAN, P. J., and LORENZ, J., concur.