CONTINENTAL BANK, N.A., Plaintiff,

v.

Robinson EVERETT, Katherine Everett,
and J.H. Froelich, Defendants.

No. 90 C 1476.

United States District Court,
N.D. Illinois,
Eastern Division.

March 29, 1994.

Janet Lynn Reed, Howard J. Roin, Lynn Dee Thesing, Andrew Stanley Marovitz, Mayer, Brown & Platt, Chicago, IL, for plaintiff.

James R. Figliulo, Robert E. Wiss, Jeffrey Charles Blumenthal, Patrick Randall Gabrione, Foran & Schultz, Chicago, IL, William H. Hrabak, Goldstine, Skrodzki, Russian, Nemec & Hoff, Ltd., Summit, IL, Ronald J. Guild, Michael Joseph Kralovec, Feiwell, Galper & Lasky, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

### STATEMENT OF FACTS

Defendants are shareholders of Guilford Telecasters, Inc. ("Guilford"), and guarantors of a $4.2 million loan made to Guilford by plaintiff, Continental Bank. Guilford has undergone Chapter 11 reorganization in the Middle District of North Carolina Bankruptcy Court, and all payments to be made to plaintiff under its reorganization plan have been made. Meanwhile, in this district, plaintiffs were found to be entitled to costs and attorneys fees incurred in connection with the enforcement of the guarantees, the amount of which could be determined in a post-judgment proceeding. *Continental Bank N.A. v. Everett*, 768 F.Supp. 246, 247–48 (N.D.Ill.1991). Judgment in favor of plaintiff was affirmed by the Seventh Circuit, *Continental Bank N.A. v. Everett*, 964 F.2d 701 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 816, 121 L.Ed.2d 688 (1992).

During appeal of the judgment, this court referred plaintiff's petition for costs and fees to Magistrate Judge Pallmeyer, who transferred the case to Magistrate Judge Bucklo. The fee petition is in fact two separate petitions, one for costs and fees incurred in enforcing defendants' guarantees, and a second, supplemental petition for costs and fees incurred since filing of the initial petition. The court is now in possession of the magistrate judge's report and recommendation concerning both petitions, and defendants' objections to it.

### ANALYSIS

■ A petition for attorneys' fees is not one of the enumerated duties assignable to a magistrate judge under the statute determining their jurisdiction, instead falling under the statute's catch all provision for "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The local rules for this district do not specifically provide for the referral of petitions for attorneys' fees either, although such a matter is within the general grant of authority provided in Local Rule 1.70(A). Consequently, in reviewing the report and recommendation, the most appropriate course of action for the court is to adopt the standard of review provided for pretrial matters dispositive of a claim or defense of a party, Fed.R.Civ.P. 72. 12 Wright & Miller: Federal Practice and Procedure, § 3076.5, at p. 48 (1993 Pocket Part).

■ In the case of Rule 72(b) matters, once a timely objection has been made to the magistrate judge's report and recommendation, the district court to whom the case is assigned shall conduct a *de novo* review upon the record. The court may accept, reject or modify the recommended decision. Fed. R.Civ.P. 72(b). The court need not conduct a new hearing, but must give "fresh consideration to those issues to which specific objections have been made." 12 Wright & Miller: Federal Practice and Procedure, § 3076.8, at p. 57 (1993 Pocket Part).

Defendants' main and, as they might characterize it, solitary objection to the report and recommendation at this point is that they are entitled to a jury trial or, failing that, an evidentiary hearing as to the reasonableness of plaintiff's attorneys' fees. Defendants have indicated that their specific objections to the fee petition thus far have been

"merely suggestive" of the errors they believe it contains, and that "it is simply impractical to mention each and every excessive instance." This is certainly a foreboding statement. However, before that may be considered, the court must first determine if defendants are indeed entitled to a jury trial or evidentiary hearing at all.

## I. The Right to a Jury Trial

The magistrate judge concluded that defendants were not entitled to a jury trial on the issue of attorneys' fees, relying on *A.G. Becker–Kipnis & Co. v. Letterman Commodities*, 553 F.Supp. 118 (N.D.Ill.1982) and *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.*, Case No. 87 C 9853, 1990 WL 129595 (N.D.Ill. September 5, 1990). These opinions themselves relied on the three factor analysis created by the Supreme Court in *Ross v. Bernhard*, 396 U.S. 531, 538, n. 10, 90 S.Ct. 733, 738 n. 10, 24 L.Ed.2d 729 (1970), for determining whether an issue is legal or equitable for purposes of the Seventh Amendment. Decisions subsequent to *Ross* have modified its analysis, encouraging reexamination of the question.

The Seventh Amendment requires a jury trial for "suits at common law," as of the date of ratification of the Amendment, 1791. However, the phrase "Suits at common law" refers to more than the common-law forms of action recognized in 1791, but all "suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies administered." *Parsons v. Bedford*, 3 Pet. 433, 447, 7 L.Ed. 732 (1830). To determine whether a particular action will resolve legal rights, the court first compares the action to 18th century actions brought in the courts of England prior to the merger of the courts of law and equity. This step seeks an inference from the fact that, prior to 1791, jury trials were customary in suits brought in the English law courts. *Tull v. U.S.*, 481 U.S. 412, 417, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987). Second, the court examines the nature of the remedy sought, and determines whether it is legal or equitable. *Id.*, at 417–18, 107 S.Ct. at 1835–36. The second inquiry is the more

important in the court's analysis. *Local 391 v. Terry*, 494 U.S. 558, 565, 110 S.Ct. 1339, 1345, 108 L.Ed.2d 519 (1990) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)). A third factor cited by the *Ross* court, the practical abilities and limitations of juries, has been relegated to instances where Congress has entrusted the resolution of certain disputes to an administrative agency or specialized court of equity. *Terry*, 494 U.S. at 565, n. 4, 110 S.Ct. at 1345 n. 4 (citing *Granfinanciera*, 492 U.S. at 42, n. 4, 109 S.Ct. at 2790, n. 4).

The purpose of this test is to determine whether a right to jury trial exists for "actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera*, 492 U.S. at 42, 109 S.Ct. at 2790. Since the availability of attorneys' fees in certain statutory actions predates the Seventh Amendment, the inquiry appears unnecessary. The English courts have allowed costs, including attorneys' fees, to the prevailing party in specific statutory-authorized actions for centuries. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975) (citing Goodhart, *Costs*, 38 Yale L.J. 849 (1929)). In the courts of law, the determination of costs was left to the judge, as it obviously was to the Chancellor in equity, the only difference being one of subject matter application. Goodhart, 38 Yale L.J. at 852–854. Hence, defendants do not appear to have a right to jury trial on the issue of attorneys' fees.

■ This result does not change even if the court chooses to put the two part *Tull* test through its paces. As stated *supra, the remedy of attorneys' fees was available to both the courts of law and equity prior to 1791, creating the inference that the remedy does not involve legal rights. Given that the awarding of attorneys' fees was left to the* judge in the courts of law, the nature of the remedy must be described as equitable as well.

The fact that the relief sought by plaintiff will take the form of a monetary judgment does not necessarily make the remedy "legal." *Terry*, 494 U.S. at 569, 110 S.Ct. at 1347. Instead, it is the context of the legal action in which the remedy is sought which determines its legal or equitable nature. *See, e.g. Terry*, 494 U.S. at 570–74, 110 S.Ct. at 1348–49 (remedy of backpay is equitable in the context of title VII but legal in the context of an unfair labor practice action under the NLRA). Hence, this case is distinguishable from *Simler v. Conner*, 372 U.S. 221, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963), in which the court found a right to jury trial in an action by an attorney against his client for past unpaid legal services. For Seventh Amendment purposes there is a distinction between attorneys' fees as the measure of damages in an action in contract and attorneys' fees as a post-judgment remedy to be awarded to the prevailing party. *Becker–Kipnis*, 553 F.Supp. at 123.

## II. The Right to An Evidentiary Hearing

Defendants' right to an evidentiary hearing on the amount of attorneys' fees, before the court if not before a jury, need not be grounded in the Seventh Amendment however. In diversity cases, state law governs the granting of attorneys' fees. *Jackman v. WMAC Investment Corp.*, 809 F.2d 377, 383 (7th Cir.1987). This principle applies not only to the right of a party to attorneys' fees, but to procedures for determining the amount of fees. *See id.*, at 384 (citing to Wisconsin law on sufficiency of evidence of fees). In Illinois, the reasonableness of attorneys' fees is a matter of proof, and the party sought to be charged therewith should be afforded an ample opportunity to cross-examine as to the reasonableness of the amounts claimed, and, if necessary, to present evidence in rebuttal. *6334 N. Sheridan Condo Association v. Ruehle*, 157 Ill.App.3d 829, 109 Ill.Dec. 907, 910, 510 N.E.2d 975, 978 (1 Dist.1987); *In re Estate of Palm*, 11 Ill.App.3d 24, 295 N.E.2d 580, 584 (1 Dist. 1973); *see also Zick v. Verson Allsteel Press Co.*, 623 F.Supp. 927, 933 (N.D.Ill.1985).

While a hearing on the reasonableness of attorneys' fees is not required, a party contesting an award is entitled to a hearing upon request. *People ex rel. Holland v. DeMichael*, 79 Ill.App.3d 974, 35 Ill. Dec. 188, 193, 398 N.E.2d 1138, 1143 (1 Dist. 1979); *Hogan v. Hogan*, 58 Ill.App.3d 661, 16 Ill.Dec. 265, 270, 374 N.E.2d 1040, 1045 (1 Dist.1978). However, if there is no request for an evidentiary hearing, an award of attorney's fees otherwise supported by the record cannot be reversed because there was no evidentiary hearing. *People ex rel. Foster v. Louder*, 97 Ill.App.3d 1104, 53 Ill.Dec. 468, 471, 423 N.E.2d 1272, 1275 (1981).

In the instant case, Defendants did not specifically request an evidentiary hearing before the magistrate judge. On October 28, 1991, Plaintiff filed its first Petition for Costs, Fees and Expenses. Defendants filed their objections to Plaintiff's first petition in December 1991. Although the Defendants asked for a jury trial, they did not request an evidentiary hearing in the event the court denied their request for a jury trial. Neither side requested oral argument, and thus the magistrate judge did not schedule any.

On June 23, 1992, Plaintiff filed a Supplemental Fee Petition. Defendants subsequently filed a second set of objections. Once again, the Defendants did not request an evidentiary hearing and neither party requested oral argument.

The magistrate judge summoned the parties for a hearing on March 25, 1993. The magistrate judge indicated that she was prepared to rule on all but one of the issues raised in the fee petition. The one remaining issue on which the magistrate judge questioned the parties involved whether the Plaintiff had preserved its right to recover fees incurred in the Guilford bankruptcy proceedings. Not until the magistrate judge indicated her approval of most of the items requested in the fee petition did the Defendants mention an evidentiary hearing.

In her Report and Recommendation, the magistrate judge stated that with respect to the Defendants' belated request for an evidentiary hearing, the Defendants have not raised any specific factual dispute warranting additional investigation. (Report and Recommendation at 5.) Similarly, in their objec-

tions to the magistrate judge's Report and Recommendation, the Defendants have not highlighted any specific factual dispute which they raised before the magistrate judge and which they argued warranted additional investigation.[1]

Defendants' assertion that the magistrate judge's report and recommendation is replete with findings of fact misses the point. As the Defendants were not entitled to a jury trial on the issue of attorneys' fees and costs and as Defendants did not request an evidentiary hearing in any of their briefs filed with the magistrate judge, the magistrate judge did not err in making findings where the briefs did not indicate any genuine issue of dispute. Although the Defendants now highlight certain factual findings made by the magistrate judge with which they disagree, they do not point to any factual issues which they argued to the magistrate judge warranted additional investigation. In light of this court's conclusion that the Defendants have waived their right to an evidentiary hearing (discussed below), Defendants' instant request to cross-examine various witnesses cannot justify a remand to the magistrate judge·for an evidentiary hearing.

The Plaintiffs assert that the Defendants have waived their right to an evidentiary hearing. Defendants argue that their request for a jury trial encompassed a request for an evidentiary hearing and thus, contrary to Plaintiff's assertion, the Defendants have not waived their right to an evidentiary hearing. This court disagrees. The Defendants' request for a jury trial did not inform the court that the Defendants desired an evidentiary hearing if the court found that the Defendants were not entitled to a jury trial on the issue of attorney's fees. The Defendants gave the magistrate judge no indication that she could not decide the various issues regarding attorney's fees based on the briefs, affidavit and other materials submitted by the parties.

Defendants argue that the "fundamental tenor of [their] opposition to Continental's

fee petitions before the magistrate was that an evidentiary hearing would be necessary to arrive at a definitive assessment of the fee petitions." (Defendants' Reply Brief at 2.) Again, this court disagrees. In their briefing before the magistrate judge, the Defendants asserted that, "[t]he above examples of excessive, unreasonable and duplicative work done by MB & P are merely suggestive of over 1½ years of generally excessive legal fees. It is simply impractical to mention each and every excessive instance. Suffice it to say, the above examples suggest that Continental Bank's petition for legal fees should be substantially reduced." (Defendants' Joint Objections to Continental Bank's Petition for Costs, Fees and Expenses at 23.) Defendants' assertion clearly does not amount to a request to examine and cross-examine witnesses, and thus did not convey to the magistrate judge that an evidentiary hearing was necessary before she could evaluate the fee petitions. The Defendants' assertion merely suggested that because the Defendants felt it was impractical to outline every instance of excessive fees, they chose to illustrate examples they believed representative.

Defendants argue further that in their briefing before the magistrate, they stated that they did not consent to the magistrate judge presiding over the proceedings and thus requested a transfer to the District court for a trial on the amount of any viable fees or expenses recoverable under the guarantees. *Id.* at 33. Specifically, the Defendants requested that the magistrate return "the matter of Continental's Petition for Costs, Fees and Expenses to the district judge for dismissal or disallowance of the items of the claim which are not recoverable as a matter of law or under the provisions of the guarantees, and for trial by jury on the items of fees and expenses potentially recoverable under the guarantees." *Id.* Defendants' request indicated that as opposed to the magistrate judge, they wanted the dis-

---

1. This Court will not address factual disputes not previously raised by the parties before the Magistrate Judge. Fed.R.Civ.P. 72(b); Wright & Miller, 12 *Federal Practice and Procedure* § 3076.8 (1992) (stating the "de novo" determination

called for in Rule 72(b) does not mean that the judge must conduct a new hearing, but simply means that he must give fresh consideration to those issues to which specific objections have been made.)

trict judge to decide the issues of law and a jury to decide the issues of facts raised by their objection to Continental's Petition For Fees and Costs. However, Defendants' request did not indicate that if the magistrate judge recommended and the district judge confirmed that the Defendants' were not entitled to a jury trial on the issue of fees and costs, neither the magistrate judge nor the District Judge could decide the issues of fact based on the briefs submitted by the parties.

As this court concludes that the Defendants' request for a jury trial is not the equivalent of a request for an evidentiary hearing, this court holds that the Defendants waived their right to an evidentiary hearing. Where the parties do not request an evidentiary hearing and the award of attorneys fees is supported by the record, including detailed supporting affidavits, this court will not reverse an award because there was no evidentiary hearing. A request for attorneys' fees should not result in a second major litigation with its further delays. *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

### III. Other Matters

■ In addition, there are several objections to the report and recommendation regarding the interpretation of the attorneys' fees provisions of defendants' guarantees which the court may decide without any further evidentiary hearing. First, the court finds that under the language of the guarantees, plaintiff is entitled to attorneys' fees incurred in litigating the two satellite actions brought by defendants in the North Carolina District Court. These actions were 92 CV 0233, a suit seeking to prevent plaintiff from collection default interest from defendants, and 92 CV 0234, a suit seeking to prevent plaintiff from recording its judgment in the North Carolina. The court agrees with plaintiff that litigating these actions, which were brought to forestall enforcing the guarantees against the defendants in whole or in part, was clearly within the scope of the language of the attorneys' fee clause of the guarantees.

It is irrelevant that defendants feel these claims to have been valid, or that they were not brought for an improper motive. It is only relevant that they are within the scope of the language of the guarantees. The fact that one of the defendants, Robinson Everett, has filed an affidavit concerning the contents of these lawsuits does not suddenly make interpretation of the purpose an "issue of fact." What is in the pleadings in these two suits is undisputed. The magistrate judge is perfectly capable of understanding them without holding an evidentiary hearing.

■ Second, the court finds that awarding plaintiff the fees of its in-house counsel does not constitute improper fee sharing between attorneys and non-attorneys. The language of the guarantees clearly allows recovery of attorneys' fees by attorneys who are employees of plaintiff. For professional responsibility purposes, these persons are attorneys first and employees of plaintiff second. No impermissible fee sharing will occur.

■ Next, defendants argue that the amount of fees incurred in collecting the amounts of the loan from Guilford Telecasters are collectible in excess of the limits of their individual guarantees. Plaintiff concedes this point, but stresses that, if the defendants have not paid up to their individual caps, then they may be assessed attorneys' fees for the collection of the loan amount from Guilford up to that point. Plaintiff is correct. If Guilford Telecasters' debt to plaintiff has been satisfied without resort to defendants' guarantees, and room remains under any of their individual liability caps, attorneys' fees may still be assessed. Absent proof that any of defendants have paid plaintiff up to the limits of their individual guarantees, fees for collection of the loan liability from Guilford may be assessed against them.

Defendants also argue that the magistrate judge's interpretation of "collection" impermissibly entitles plaintiff to recover attorneys' fees for litigating the North Carolina District Court suits and collection of loan amount from Guilford Telecasters. Defendants do not object to the magistrate judge's interpretation of the term "liabilities" to include the amounts owed by Guilford Telecasters, or to the magistrate judge's finding that Guilford's loan agreement includes ex-

penses of enforcement of the obligations of all guarantors. The Seventh Circuit has interpreted similar guaranty language to include attorneys' fees incurred in bankruptcy proceedings. *First Bank Southeast, N.A. v. Predco, Inc.*, 951 F.2d 842, 852 (7th Cir.1992). Defendant's objections on this score have no merit.

Finally, as plaintiff notes, the court has already commented on the propriety of defendant's argument that plaintiff's conduct during the Chapter 11 proceedings was unduly dilatory to those proceedings. *Continental Bank, N.A. v. Everett*, 760 F.Supp. 713, 724 (N.D.Ill.1991). Consequently, defendants' argument that plaintiffs attorneys' fees incurred in the Chapter 11 proceeding should be reduced fails.

## CONCLUSION

For the foregoing reasons, the court affirms and adopts the magistrate judge's Report and Recommendation. Thus, Continental is awarded $7,557.26 in costs and $792,342.95 in fees.

## *REPORT AND RECOMMENDATION*

ELAINE E. BUCKLO, United States Magistrate Judge.

Continental Bank filed a petition for costs, fees and expenses incurred in collecting guaranties by Robinson Everett, Kathrine Everett and J.H. Froelich of a debt owed the bank by Guilford Telecasters, Inc. The district court previously entered summary judgment in favor of the bank, 760 F.Supp. 713 (N.D.Ill.1991) and 768 F.Supp. 246 (N.D.Ill. 1991), which judgment was affirmed by the Seventh Circuit, 964 F.2d 701 (7th Cir.1992). The only issue remaining is the amount of the costs and fees. *Id.* at 706.

Continental seeks fees pursuant to two fee petitions. The first, filed before the Seventh Circuit's opinion affirming Judge Bua's prior decisions, seeks $7,557.26 in costs, $416,981.86 fees and expenses in enforcing the guaranties, and $219,797.78 in expenses of enforcing Guilford's and non-defendant guarantors' obligations. Continental's supplemental fee petition seeks $208,279.51 in additional collection expenses as well as $11,518.27 in additional expenses enforcing the obligations of Guilford or other guarantors.

In response to Continental's fee petition, defendants have raised numerous objections. I will consider only those that have not been previously ruled upon; *see* the opinions cited above as well as Judge Nordberg's opinion dated June 17, 1992.

Defendants first argue that Continental is limited to a judgment for fees incurred in pursuing the defendants' guaranties in this litigation. Continental asks not only for fees and expenses incurred in pursuing these guarantors but for a ruling that defendants are liable for fees and expenses in enforcing the obligations of Guilford or non-defendant guarantors in the amount of $219,797.78 (plus $11,518.27 in Continental's supplementary petition). The guaranties signed by the defendants provide that they are liable for "all expenses (including attorneys' fees ... ) paid or incurred by the Bank ... in endeavoring to collect the Liabilities, or any part thereof and in enforcing this Guaranty." Guaranty, § 1. The Guaranties further define Liabilities to include all obligations of Guilford to the bank. *Id.* The Loan Agreement between Guilford and the Bank provides that Guilford's obligations include "all reasonable expenses ... incurred by the Bank in connection with ... (iii) the enforcement of the Company's and the Principals' respective obligations under the Loan Document." Agreement, § 12.3. Each of the guarantors, including the non-defendant guarantors, is a "Principal." *Id.*, § 1.1. Under their contracts, therefore, defendants are liable for the fees and expenses reasonably incurred by Continental in enforcing Guilford's obligations and the enforcement of the obligations of other guarantors.

Defendants argue, however, that the Seventh Circuit's opinion, in which it stated that the "sum of approximately $75,000.00, plus the legal fees the Bank has incurred pursuing the guarantors, are the remaining stakes," precludes any expenses, pre– or post-judgment for any fees other than those the Bank has spent pursuing them. Judge Bua had entered judgment against defendants in the amounts recoverable under the

caps in their guaranties, finding that there was no genuine issue of material fact with respect to the principal and interest due under the loan. 768 F.Supp. 246, 247 (N.D.Ill.1991). In its reply memorandum in support of summary judgment on damages, Continental had argued that the issue of expenses relating to the bankruptcy proceeding, or any other fee issues, was not before the court and would be addressed in a post-judgment fee petition. Judge Bua did not specifically address the question of fees or expenses apart from those incurred by Continental pursuing the guarantors, which he noted was properly addressed at a later time. *Id.* at 247–48. He did not, however, hold that any expenses in pursuing Guilford were encompassed in the judgment, and Continental's fee request has not been ruled upon up to the present time. Thus, it could not have been before the Seventh Circuit, and indeed, is not mentioned in any brief filed by the parties in the appeal to the Seventh Circuit. I conclude that the Seventh Circuit's opinion in this case does not prevent Continental from pursuing the fees and expenses it seeks in the two petitions before me.

Defendants also argue that they are entitled to a jury trial on the issue of attorneys' fees. That argument has been rejected in various decisions. *E.g., Medcom Holding Company v. Baxter Travenol Laboratories, Inc.,* 1990 WL 129595, 1990 U.S. Dist. LEXIS 11647 (N.D.Ill.1990); *A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.,* 553 F.Supp. 118 (N.D.Ill.1982); *Boatmen's Bark of Mt. Vernon v. Dowell,* 208 Ill.App.3d 994, 567 N.E.2d 739, 153 Ill.Dec. 781 (5th Dist. 1991). The courts in *Medcom Holding Company* and *A.G. Becker–Kipnis,* considering contract provisions allowing fees, concluded that the parties did not have a right under the Seventh Amendment to a jury trial both because attorneys' fees traditionally were decided by the court and not the jury and because of the fact that attorneys' fees may be on-going (as in the present case), as a practical matter they should not be given to a jury to decide.

Defendants argue that at least the fees and costs associated with Guilford's obligations (as opposed to the enforcement of defendants' guaranties) should be decided by a jury. They find support in cases such as *Beckwith Machinery Co. v. Travelers Indemnity Co.,* 815 F.2d 286 (3d Cir.1987). The court in that case held that a jury should decide the issue of attorneys' fees. As Judge Conlon noted in *Medcom Holding Company, supra,* however, the Third Circuit did not analyze the issue in terms of the Seventh Amendment analysis adopted by the Supreme Court in *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

Defendants have also not pointed to any issue of fact that would be tried to a jury (or to the court, as they suggested would be their alternative right in argument before me on March 26, 1993). In their various memoranda they disagreed with various claims for fees or expenses, but most of the disagreement centers on Continental's legal right to specific items of expense. Affidavits filed by defendants do not raise an issue of material fact as to any of the fees sought by Continental and supported by its affidavits. Defendants do say the contract terms are ambiguous but I have concluded that they are not. They also say they did not attempt in their responses to the two fee petitions submitted by Continental to point out every item with which they disagreed. Their obligation, however, was to do just that.

Defendants also argue that Continental may not collect any fees incurred in the North Carolina bankruptcy proceeding because it was not a collection proceeding. However, it is clear that expenses incurred in collecting a debt in a bankruptcy proceeding may be collected under the terms of a contract in a separate proceeding. *First Bank Southeast v. Predco, Inc.,* 951 F.2d 842, 852 (7th Cir.1992). *Accord, Candlewick Lake Assocs. v. Continental Illinois National Bank & Trust Co.,* 1987 WL 9004 (N.D.Ill.1987). Furthermore, the bankruptcy court expressly held that its order would not affect the rights of the parties to the present case "or any other of Continental's past, present or future collection activities or efforts against any guarantor of the indebtedness to Continental and shall not affect any obligations that any such guarantor might have to Continental."

Amended Order Confirming Plan, June 13, 1991.

Defendants also argue that Local Rule 46 prohibits the collection of expenses incurred after final judgment was entered in this case on July 22, 1991. However, in this case, Continental filed its initial fee petition within the 90–day period and stated at the time that it would seek to file a supplemental petition following the appeal. The district court granted permission to file the supplemental petition in June, 1992. *Accord, Chesser v. Illinois,* 1990 WL 114645 (N.D.Ill.1990) (allowing supplemental fee petition following appeal). *See also Townsend Engineering Company v. Hitec Co., Ltd.,* 117 F.R.D. 612 (N.D.Ill.1987).

Turning to specific items, defendants have not contested any part of the $7,557.26 in statutory costs. They should be awarded without reduction.

Continental's fee petition includes $13,035.00 for fees and expenses of the Bank's in-house counsel in overseeing this litigation. Defendants argue that these fees are not collectible. However, the express language of the loan agreement signed by defendants permits collection of such fees. *See* Loan Agreement, § 12.3. The objection should be overruled.

Continental's fee petition includes amounts spent by Walter Rand, a bankruptcy attorney in North Carolina, and his law firm, Carruthers & Roth. Defendants object that the amounts sought include attorneys' fees for Mr. Rand's attendance at his own deposition. I agree that under 28 U.S.C. § 1821, Continental is limited to the statutory witness fee (plus statutory expenses) for the attendance of an attorney at his own deposition. The amount of time Mr. Rand spent in his deposition is therefore not recoverable as attorney time. Defendants further object to some 80 hours of time Mr. Rand spent attending depositions in connection with this litigation. Defendants argue that Mayer, Brown & Platt charged for two attorneys to attend these same depositions, and that if they are required to pay for Mr. Rand's time in addition, they will be charged for three attorneys' time in attending a single deposition. Continental says Mr. Rand contributed his valuable knowledge as a bankruptcy attorney but has not otherwise responded to defendants' argument that three attorneys are at least one too many at a single deposition. I agree. Fees should be reduced accordingly.

Defendants also object to the remainder of collection fees attributed to the North Carolina law firm of Carruthers & Roth on the ground that the fees are insufficiently documented. However, the fees charged to the defendants' guaranties have been separately stated, and the alleged discrepancies in fees explained. I find nothing objectionable in the statements as explained. The fees sought are reasonable in amount.

Continental's fee petition includes travel expenses for several Continental bank officers who made trips to defendants' business offices in Greensboro, North Carolina. Defendants object that these expenses are not covered by the guaranties and that more people than necessary made the trips. In response, Continental has filed the affidavit of the bank officer in charge of staffing such trips, who says that the trips were a necessary part of Continental's collection efforts and that no more personnel than necessary went on each trip. Continental also argues, and I agree, that the language of the guaranties, which requires defendants to pay "all expenses" of Continental "in endeavoring to collect the Liabilities, or any part of them," covers these expenses. The objection should be overruled.

Defendants also object to numerous items on Mayer, Brown & Platt's itemization of fees, arguing that the law firm spent excessive amounts of time on various matters. The first item as to which defendants object is 59 hours billed to research and writing a sur-reply brief to a motion to dismiss filed by defendants. I have examined the briefs in question and conclude that the amount of time billed is not unreasonable. Defendants' motion to dismiss was based on lack of jurisdiction and they raised new issues in, and filed a new affidavit with, their reply memorandum in support of the motion. Ultimately, Judge Bua decided against defendants on the issue, and later concluded there was in-

sufficient evidence to warrant a trial on the issue of personal jurisdiction. That decision was upheld by the Seventh Circuit. Continental's briefs undoubtedly prevented the additional time, and expense, of a trial.

Defendants' second objection to Mayer, Brown & Platt's billing statements concerns 6.50 hours in August, 1990, that defendants say is unnecessarily duplicative. The time in question was spent reviewing defendants' answers and counterclaim and discussing them with co-counsel and the client. No attorney could adequately work on the case without reviewing the pleadings in question. I do not find the time spent to be unreasonable.

Defendants next object to the fact that Mayer, Brown & Platt billed 30.25 hours for a reply to defendants' counterclaim. However, defendants' counterclaim was a three count claim in which they sought a discharge from the guaranties and damages. The amount of time spent on the 19–page answer is reasonable.

Defendants' fourth objection to Mayer, Brown & Platt's billing statements concerns 53.25 hours spent responding to defendants' first set of interrogatories. Continental argues that the interrogatories, with subparts, included 60 questions. I have reviewed the answers to interrogatories. Many of the answers simply note that a few individuals may have the information sought. In other cases, Continental objected to providing any answer. The actual information provided in the answers is not extensive. I conclude that the amount of time spent is excessive for the amount of information provided. I would reduce the number of hours to 40.

Defendants' next objection is that Mayer, Brown & Platt attorneys spent 270.75 hours researching and writing a memorandum in support of summary judgment. Continental responds that the amount of time billed was 229 hours, which included time spent taking depositions, responding to defendants' motion to transfer and preparing for trial. While much of that time does appear to have been spent on the summary judgment memorandum and supporting materials, in light of defendants' vigorous efforts to defeat Continental's collection efforts, the issues raised and discussed in the memorandum, and the

fact that Continental's motion was successful, the amount of time has not been shown to be unreasonable.

Mayer, Brown & Platt billed 300.25 hours to research and write a reply memorandum in support of its motion for summary judgment. Defendants also object to this expenditure of time. Defendants' response to Continental's summary judgment motion was a 30–page memorandum that included extensive argument and citation of legal authority. Continental reasonably spent considerable time responding to this memorandum. My review of Continental's time records indicates that defendants have included every time entry that in any way referred to the reply memorandum in coming up with their figure of 300 hours. Many of the time entries, however, also included time for trial preparation. Excluding those time entries that included time spent on other matters, the time billed that was devoted exclusively to the reply memorandum is 219.75 hours. While it is fair to assume that a reasonable portion of the additional 80 hours was billed for work on the reply memorandum, the actual time is somewhere in between 220 and 300 hours (rounded off to the hour). That is still a very substantial amount of time. It seems clear that part of the reason for the amount of time is that five attorneys worked on the memorandum. It is apparent that some unnecessary duplication resulted from the efforts of so many attorneys. Taking into account the fact that defendants have not suggested a number of hours that would be reasonable and the fact that some of the duplication caused by multiple attorneys working on the same brief may have been the result of the fact that trial preparation was also necessary during the same period since trial was scheduled to begin soon after the filing date for the brief, I recommend that the time to be charged to defendants be reduced by 30 hours.

Defendants filed a 15–page sur-reply to Continental's reply memorandum. Continental obtained permission to file its own sur-reply in response to defendants' memorandum. I agree with defendants that Continental did not reasonably need another 136.75 hours to write its sur-reply. Defen-

dants' own sur-reply for the most part simply reargued points made earlier and Continental did not need to do more than minimal new research. I recommend that the time to be charged to defendants be reduced by 60 hours.

Defendants also complain that Mayer, Brown & Platt charged for 80.75 hours writing a reply memorandum in support of summary judgment on the issue of damages. It is apparent, however, from a review of that memorandum as well as the memoranda filed by defendants in opposition to Continental's initial memorandum in support of summary judgment on damages, that substantial work was required to fully respond to the arguments made by defendants. I do not find the amount of time spent to be unreasonable.

In summary, I recommend that the time defendants are charged for work done by Mayer, Brown & Platt be reduced by 103.25 hours. I have not attempted to determine which attorneys' time should be reduced and recommend that the average billing rate, which Continental represents is $130.00, be applied to this figure to determine the actual reduction.

Defendants argue that the specific objections noted by them are simply representative and that the fees charged by Mayer, Brown & Platt should be reduced substantially. With few exceptions, however, I have not found that the bills were excessive. It should also be remembered that but for the fact that Continental obtained summary judgment, the case would have gone to trial, almost surely resulting in substantially larger fees and costs. Furthermore, the large fees were necessitated by defendants' insistence on fighting Continental's efforts to enforce the guaranties. Finally, it is apparent both from my reading of the briefs and Continental's success in this litigation, that Mayer, Brown & Platt's representation in this case was of excellent quality. I find no basis for a wholesale reduction in fees on the basis of the records, briefs, and court opinions reviewed by me.

Continental also seeks reimbursement for costs charged to it by Mayer, Brown & Platt. Defendants object, arguing that photocopying, telephone, delivery, postage and compu-terized research charges are overhead that is included in attorneys' hourly fees. Defendants' argument ignores the fact that in this case Continental was separately charged for each of the items for which it now seeks recovery against them. The charges were not included in the attorneys' hourly fees. In addition, the loan agreements signed by them allow Continental to recover "all expenses" in the enforcement of the guaranties. These charges are therefore recoverable. Defendants also argue that some of the Lexis and Westlaw charges have not been properly documented. However, in its reply Continental has satisfactorily explained the discrepancies noted by defendants, and provided documentation.

Defendants make several objections to the amount sought by Continental in its supplemental petition. The first is to amounts that defendants say Continental incurred after December 31, 1991, in seeking to have execution issued against defendants when Continental had received payment from Guilford of the principal amount owed. Defendants say at that point, no one knew what the defendants owed, and it was premature to attempt to register or execute the judgment. They do not, however, point to any specific amount said to be attributable to this effort, nor do they identify the hours in question.

Defendants also object to Continental's inclusion of attorney's fees and costs incurred in defense of two suits filed in federal district court in North Carolina in 1992 in the fees sought in the present suit. The suit brought by defendants and one non-defendant guarantor, No. 1:92CV00234, is a clear attempt to evade the judgment in this case. That suit seeks to enjoin Continental from executing the judgment in the present case in North Carolina and to enter a satisfaction of the judgment registered in North Carolina. Success in that suit would prevent Continental from enforcing its guaranty—incorporated in the judgment in this case—against defendants. Fees generated as a result of that suit are recoverable under the language of the guaranties. *Exchange National Bank of Chicago v. Daniels,* 763 F.2d 286, 294 (7th Cir.1985). The second suit is ostensibly brought by Guilford Telecasters, Inc. against

Continental, No. 2-92CV00233, also in federal district court in North Carolina. That complaint alleges that Continental is improperly attempting to collect default interest from the guarantors and has overcollected from Guilford and its officers and stockholders (including the guarantors) the amount due. This suit also then directly impacts Continental's judgment in the present case and its ability to collect on that judgment. Continental's fees are within the scope of the obligation of the guarantors to pay the expenses incurred in enforcing the guaranties.

### Conclusion

I recommend that Continental's fee petitions be allowed in the amount of $831,154.92 plus $7,557.26 in costs. That includes all of Continental's statutory costs and all fees and expenses sought except for $13,422.50 attributable to time spent by Mayer, Brown & Platt on certain briefs and $12,000.00 in charges by the bankruptcy firm in North Carolina that I conclude should not be charged to defendants.