BOATMEN'S BANK OF MT. VERNON, Plaintiff-Appellee, v. BETTY J. DOWELL, Defendant-Appellant.

Fifth District   No. 5—90—0005

Opinion filed February 25, 1991.

Darrell Dunham and William F. Meehan, both of Carbondale, for appellant.

Howard & Howard, of Mt. Vernon (G.W. Howard III, of counsel), for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Betty J. Dowell, appeals from a judgment of the circuit court of Jefferson County in favor of plaintiff, Boatmen's Bank of Mt. Vernon, in the amount of $115,403.90, of which $5,980.70 constituted an award for attorney fees. Judgment was entered after the trial court granted plaintiff's motion for directed verdict and denied defendant's motion for directed verdict. Defendant raises a number of issues concerning whether the trial court erred in directing a verdict for plaintiff. After careful consideration, we have determined the issues in this case to be: (1) whether the second guaranty signed by defendant on December 10, 1986, is a "new promise" within the meaning of section 13—206 of the Code of Civil Procedure (the Code)

(Ill. Rev. Stat. 1985, ch. 110, par. 13—206), thereby making the affirmative defense of the statute of limitations inapplicable; (2) if the second guaranty is a "new promise" under section 13—206, whether the second guaranty was supported by consideration; and (3) whether the trial court erred in awarding attorney fees. We affirm.

The facts in this case are relatively straightforward. Defendant's husband, Nobel Y. Dowell, borrowed money from plaintiff on several occasions beginning in April 1976. Prior to loaning Mr. Dowell any money, plaintiff required defendant to guarantee the obligations of her husband. On April 12, 1976, defendant signed the following guaranty:

"GUARANTY

The undersigned hereby requests SECURITY BANK & TRUST CO., MT. VERNON, ILLINOIS (herein called the 'Bank') to give and continue to give Noble [sic] Y. Dowell (herein called the 'Borrower') credit, as the Borrower may desire and the Bank may grant, from time to time, whether to the Borrower alone or to the Borrower and others, and in consideration of any credit given, the undersigned hereby absolutely and unconditionally guarantees prompt payment when due and at all time thereafter of any and all existing and future indebtedness and liability of every kind, nature and character (including all renewals, extensions and modifications thereof) from the Borrower to the Bank, howsoever and whensoever created, or arising, or evidenced, or acquired; and the undersigned waives notice of the acceptance of this guaranty and of any and all such indebtedness and liability. The undersigned hereby waives presentment, protest, notice, demand or action on delinquency in respect of any such indebtedness or liability, including any right to require the Bank to sue or otherwise enforce payment thereof.

This guaranty is made and shall continue as to any and all such indebtedness and liability of the Borrower to the Bank, incurred or arising prior to receipt by the Bank of written notice of the termination hereof from the undersigned, without regard to collateral, or security, or guaranties, or other obligors, if any, or to the validity or effectiveness of any and all thereof; and any and all such collateral and security and guaranties and other obligors, if any, may, from time to time, without notice to or consent of the undersigned, be sold, released, surrendered, exchanged, settled, compromised, waived, subordinated or modified, with or without consideration, on such terms or condi-

tions as may be acceptable to the Bank, without in any manner affecting or impairing the liability of the undersigned. It is agreed that the undersigned's liability hereunder is several and is independent of any other guaranties at any time in effect with respect to all or any part of the Borrower's indebtedness to the Bank, and that the undersigned's liability hereunder may be enforced regardless of the existence of any such other guaranties.

This guaranty shall also bind the heirs, personal representatives, successors and assigns of the undersigned and shall inure to the Bank, its successors and assigns. Mt. Vernon, Illinois April 12 1976.

/s/    Betty J. Dowell    (Seal)

Betty J. Dowell"

Thereafter, on April 16, 1976, plaintiff loaned defendant the sum of $4,000. On August 2, 1985, plaintiff loaned Mr. Dowell $60,000 (hereinafter referred to as the $60,000 note). On June 9, 1986, plaintiff loaned Mr. Dowell an additional $45,432.43 (hereinafter referred to as the $45,000 note). The $45,000 note was due on December 9, 1986. A letter dated December 9, 1986, was sent to Mr. Dowell by plaintiff's chairman and chief executive officer, which read:

"Dear Nobel:

Attached is the renewal on Note No. 58048 in the amount of $45,432.43 for six months.

We also need a new guaranty agreement signed by Betty. The one we have is over 10 years old."

Another blanket guaranty, similar to the one originally signed by defendant on April 12, 1976, was signed by defendant and is dated December 10, 1986. It reads:

"GUARANTEE

In consideration of Boatmen's Bank of Mt. Vernon (hereinafter 'Bank') making advances of money or otherwise giving credit to N. Y. Dowell, Sr. (hereinafter 'Borrower'), the undersigned does hereby guarantee the full and prompt payment to said Bank of all indebtedness, obligations and liabilities of said Borrower to said Bank now existing or hereafter created or arising.

This is a continuing, absolute and unconditional guarantee and shall continue in force with respect to all indebtedness of the Borrower until terminated as to the undersigned upon receipt of written notice by the Bank from such undersigned to

that effect or from the legal representative of the undersigned of the death of the undersigned, in which events it will not apply as to any advances made thereafter, but will remain in full force as to the indebtedness then existing.

This guarantee is absolute and is not affected by any failure of the Bank to give notice of default on the part of the Borrower, nor by extensions granted to said Borrower, nor by any acts or omissions whatsoever by the Bank relative to the indebtedness of the Borrower or any of the undersigned or any collateral that may be secured therefor. Notice of the acceptance of this guarantee by the Bank is hereby waived by the undersigned.

Upon any default in the payment of the indebtedness covered by this guarantee, or any part thereof when due, the Bank may, if it so desires, proceed directly against the undersigned without first taking any steps against the Borrower or any collateral that it may hold, and without any prior demand or notice. This guarantee continues in full force and effect until the full amount of the limit of liability hereunder has been paid by the undersigned.

This guarantee is to cover not only the principal and interest of the indebtedness of the Borrower, but all costs reasonably incurred in and about the same, including attorneys' fees involved in making collection against the Borrower and against the undersigned under this agreement.

It is understood that the amount of credit that may be extended to Borrower, and the amount of indebtedness or liability that may be incurred by Borrower is not limited. The liability of the undersigned to the Bank hereunder shall be unlimited unless otherwise indicated herein.

If more than one, the undersigned are liable jointly and severally for the full amount of indebtedness unpaid by the Borrower. Suits for the enforcement of this guarantee may be brought successively against one or more of the undersigned, and the Bank may compound or settle with any one of the undersigned without releasing or impairing its rights against the others of the undersigned. This guarantee shall continue in full force and effect and bind the undersigned notwithstanding the death or release of any co-guarantor or other party hereto.

This guarantee shall bind the heirs, personal representatives, and successors of the undersigned, and shall inure to the benefit of the Bank and its successors.

This guarantee is (check one):

[X] Unsecured.

[ ] Secured by a Security interest in certain collateral described in a security agreement to be executed concurrently herewith by the undersigned. The undersigned agrees promptly upon the execution of this guarantee to execute and deliver such papers and forms as shall be deemed by the Bank to be necessary or advisable to create a perfected security interest in such collateral.

The continuing guarantee granted by the undersigned is secured by the pledge of any property and/or securities delivered to the Bank and by any substitutions therefor or additions thereto which may be hereafter made, and by any and all monies, securities or property of the undersigned that may have been or may be hereafter pledged to or come into possession of the Bank, including money on deposit with the Bank, and the checking or savings account of the undersigned, and monies, securities or property of the undersigned in transit to said Bank. Upon the non-payment of any debt, the repayment of which is hereby guaranteed, the Bank is hereby irrevocably authorized to sell such property and/or securities, or any part thereof, at public or private sale, without recourse to judicial proceedings, and in accordance with the Uniform Commercial Code of Illinois, and Bank is hereby irrevocably authorized to make any transfers or deliveries to the purchaser or purchasers at such sale of any such property and/or securities and to apply the proceeds thereof (1) to the payment of all costs and commissions for selling and (2) to the payment of any indebtedness of Borrower, including principal, interest and attorneys' fees, up to the amount guaranteed hereunder.

Dated at <u>Mt. Vernon, Illinois</u> this <u>10th</u> day of <u>December 1986</u>.

/s/    <u>Betty J. Dowell</u>

Betty J. Dowell"

The trial court record also includes a copy of plaintiff's commercial loan activity journal dated January 7, 1987, which states that the $45,000 note was renewed on December 12, 1986. Witnesses for plaintiff testified that interest on the December 1986 renewal note would

begin to accrue on December 9, 1986. No representatives of plaintiff discussed with defendant the implications of her signing the December 10, 1986, guaranty. Defendant signed the December 1986 guaranty at her husband's request. A later renewal was made on the $45,000 note, but all issues pertained to the December 1986 renewal and guaranty.

Defendant's husband died on March 2, 1988, with outstanding debts to plaintiff. On September 2, 1988, plaintiff filed a four-count complaint seeking recovery from defendant. Plaintiff was granted summary judgment as to count I after defendant admitted liability in her answer. Count IV was subsequently dismissed. Count II sought recovery on the $60,000 note, while count III sought recovery on the $45,000 note. Counts II and III were allowed to go to trial on October 10 and 11, 1989. At the close of all the evidence, the trial court denied defendant's motion for directed verdict and granted plaintiff's motion for directed verdict. The trial court found that the second guaranty signed by defendant in December 1986 revived the first guaranty signed on April 12, 1976, that the second guaranty was a "new promise" as provided for in section 13—206 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 13—206), that there was adequate consideration for the first guaranty so that the signing of the second guaranty revived the first guaranty, and that, as a matter of law, judgment should be entered on behalf of plaintiff and against defendant as to both counts II and III. Subsequently, on December 19, 1989, a hearing was held on the issue of attorney fees after which the trial court entered judgment in the amount of $115,403.90 for plaintiff against defendant with $109,423.20 attributable to principal and interest, and $5,980.70 attributable to attorney fees.

■ Defendant initially contends that because a directed verdict was entered in this case, a *de novo* review is required by us with no presumption of validity being given to the trial court's ruling. However, the law is clear that "verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.) It is this standard we will use to review the case at bar.

The first issue we must consider is whether the second guaranty signed by defendant on December 10, 1986, is a "new promise" within the meaning of section 13—206 of the Code (Ill. Rev. Stat. 1985, ch. 110, par. 13—206). Defendant contends that the guaranty

which she signed on December 10, 1986, was not a "new promise" within the meaning of the statute because it did not specifically mention the April 12, 1976, guaranty. Defendant argues that the first guaranty must have been specifically referred to in the second guaranty in order to show a clear intent to revive the original promise. Plaintiff responds that the second guaranty was a "new promise" within the meaning of the statute and that the trial court correctly found that the new promise revived and renewed the original obligation which was supported by consideration. We agree.

Section 13—206 provides:

"§13—206. Ten year limitation. Except as provided in Section 2—725 of the 'Uniform Commercial Code' [Ill. Rev. Stat. 1985, ch. 26, par. 2—725], actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within 10 years next after the cause of action accrued; but if any payment or new promise to pay has been made, in writing, on any bond, note, bill, lease, contract, or other written evidence of indebtedness, within or after the period of 10 years, then an action may be commenced thereon at any time within 10 years after the time of such payment or promise to pay." Ill. Rev. Stat. 1985, ch. 110, par. 13—206.

The purpose of the statute of limitations is to discourage the presentation of stale claims and to encourage diligence in bringing actions. (*Nicolai v. Mason* (1983), 118 Ill. App. 3d 300, 302, 454 N.E.2d 1049, 1050.) When a statute of limitations is established, it bars any remedy for recovery of a debt. However, a moral obligation to pay the debt remains, even though the remedy for enforcement has been extinguished. As stated over 130 years ago:

" 'The debt constituting an unquestioned moral obligation, is, however, a good consideration to support a promise to perform that obligation, and a new promise, based upon this moral obligation, is binding upon the debtor in avoidance of the bar of the statute.' " (*Kallenbach v. Dickinson* (1881), 100 Ill. 427, 434, quoting *Keener v. Crull* (1857), 19 Ill. 189, 190.)

Such logic is the basis for the present statute of limitations found in section 13—206 of the Code. By its language, a new promise to pay the debt, even after the 10-year period has expired, will remove the bar of the statute of limitations.

It has been said that " '[i]f the debt be identified with such certainty as will clearly determine its character and show a present unqualified willingness and intention to pay, that is sufficient to con-

stitute the new promise.' " (*Hurtt v. Steven* (1948), 333 Ill. App. 181, 185, 77 N.E.2d 204, 206, quoting *Walker v. Freeman* (1904), 209 Ill. 17, 22-23, 70 N.E. 595, 597.) The language used in the second guaranty stated that defendant promised to pay all debts and liabilities of N.Y. Dowell, Sr., existing prior to December 10, 1986, or created by the December 10, 1986, document. While the second guaranty does not specifically refer to the first, we believe that the general language adequately apprised defendant that she was renewing her obligation to guarantee, without exception, the debts of her husband as she first promised on April 12, 1976.

■ Defendant cites a myriad of cases in her brief in an attempt to support her contention that because the April 12, 1976, guaranty is not specifically referred to in the second guaranty, it does not revive the first promise. We have examined the authorities relied upon by defendant, but have found none which convince us that the first guaranty had to be mentioned specifically in the second guaranty in order for it to constitute a bar to the statute of limitations. For example, *Swanson v. Willrett* (1929), 254 Ill. App. 92, which was relied upon by defendant, does not stand for the proposition that in order to revive an old promise, the first promise must be specifically referred to by date. Rather, the *Swanson* court found that the oral statement by the debtor, "I will be down to see you this evening and take care of it this evening" was insufficient to establish a promise removing the bar of the statute of limitations. Such a statement can hardly be said to constitute a clear and absolute promise to pay, whereas, the instant language does contain an unequivocal and sufficiently clear promise. Defendant signed a written guaranty with sweeping language that she was guaranteeing all indebtedness, obligations, and liabilities of her husband. We believe the second guaranty was sufficiently clear and defendant's signature on it showed a continued willingness and intention to pay as first agreed to on April 12, 1976.

■ Defendant also places great reliance on *Farmers State Bank v. Doering* (1980), 80 Ill. App. 3d 959, 400 N.E.2d 705; however, *Doering* did not concern the interpretation of a second guaranty as it relates to the statute of limitations. Instead, *Doering* stands for the general proposition that guaranty contracts are to be strictly construed in favor of the guarantor, a proposition with which we have no quarrel. Applying the *Doering* standard, we find that the second guaranty was sufficiently clear so as to raise a bar to the statute of limitations as provided for in section 13—206 of the Code.

■ It is undisputed that a "new promise" does not require new consideration in order to effectively bar the statute of limitations de-

fense. It is the new promise, supported by the original consideration, that effectively takes the case out of the statute of limitations. (*Robinson v. Briscoe* (1894), 55 Ill. App. 131.) There is no contention that the first guaranty was not supported by adequate consideration, as the $4,000 note was not received by defendant's husband until four days after defendant signed the original guaranty. The second guaranty revived the first guaranty, making defendant liable for both the $60,000 note and the $45,000 note. Therefore, the trial court did not err in directing a verdict for plaintiff on both counts II and III.

Because we find the statute of limitations defense inapplicable to the first guaranty, we need not address the issue whether the second guaranty was supported by its own consideration. As pointed out by the trial court, the consideration issue is but a red herring. The remaining issue we are obliged to address is whether the trial court erred in awarding plaintiff attorney fees.

Defendant argues that the issue of attorney fees is a question of fact which must be decided by a jury, given the defendant's request for a jury. Defendant makes a general statement that she has a constitutional right to have a jury decide the issue of attorney fees. We are unconvinced by defendant's argument.

■ Defendant cited no cases which have held that it is a jury's duty, not a trial court's duty, to determine the amount of reasonable attorney fees. After our own search, we can find no such cases. Instead, we note that there are situations in which the General Assembly has made statutory provisions for the awarding of attorney fees by the trial court rather than a jury. For example, section 155 of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 767) provides that the determination of reasonable attorney fees in a case in which there has been unreasonable and vexatious delay or refusal to pay a claim may be made by the court rather than a jury. (See *Stewart v. Guarantee Trust Life Insurance Co.* (1944), 321 Ill. App. 588, 593, 53 N.E.2d 476, 478.) Section 17 of the Illinois Parentage Act of 1984 (Ill. Rev. Stat. 1985, ch. 40, par. 2517) also provides for the determination of an award of attorney fees by a trial court rather than a jury. Moreover, a court may properly award attorney fees according to the specific language of a contract. (*Exchange National Bank v. Sampson* (1989), 186 Ill. App. 3d 969, 974, 542 N.E.2d 1303, 1307; *Ferrara v. Collins* (1983), 119 Ill. App. 3d 819, 825, 457 N.E.2d 109, 113.) Absent a manifest abuse of discretion, the trial court's award of attorney fees will not be disturbed. 186 Ill. App. 3d at 974, 542 N.E.2d at 1307.

■■ In the instant case, plaintiff's claim for attorney fees at trial was grounded upon language provided for on both notes. The August

2, 1985, principal note for $60,000 contains the following language relating to attorney fees:

> "If suit shall be brought to collect this note or foreclose the mortgage hereinafter mentioned, then and in either such case all costs and expenses which may be incurred in such suit or suits, including a reasonable attorney's fee to be fixed by the court, shall be added to and made a part of such judgment or decree as may be obtained and shall be collectible therewith."

The $45,000 note originally signed on June 9, 1986, contains the following language relating to attorney fees:

> "If this note be not paid at maturity, the parties hereto agree to pay interest on the principal amount due at the rate above provided for and all costs of collection including fifteen per cent (15%) of the amount due hereon for attorney's fees."

The $45,000 renewal note states:

> "If this note be not paid upon demand and if it should be placed in the hands of an attorney for collection, the parties hereto agree to pay additional costs for collection and fifteen percent of the amount due as an attorney's fee."

Clearly, the notes on which plaintiff was suing provided for the award of attorney fees. The $60,000 note allows for the award of "a reasonable attorney's fee" while the $45,000 note provides for "fifteen per cent (15%) of the amount due hereon for attorney's fees." Plaintiff's application for fees included affidavits which describe the work performed, the total hours of time spent in preparation, the hourly rates for such time, and the out-of-pocket expenses incurred. Moreover, plaintiff's attorney introduced the testimony of another local attorney who has performed similar work for commercial clients and who found the amount of work performed and the hourly rate charged to be reasonable. The award of attorney fees in the amount of $5,980.70 was without a doubt a reasonable award. Because we find that the award was reasonable, and because we are unconvinced by defendant's argument that it is the jury's province to determine the amount of attorney fees to be awarded, we conclude that the trial court did not err in awarding plaintiff attorney fees.

For the foregoing reasons, the judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

WELCH and CHAPMAN, JJ., concur.