THE CITY OF MATTOON, Plaintiff-Appellee, v. LEON MENTZER, d/b/a Jramb and Associates, Defendant-Appellant.

Fourth District No. 4—95—0637

Argued February 21, 1996.—Opinion filed July 19, 1996.

H. Kent Heller (argued) and David Stevens, both of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

M. John Hefner, Jr. (argued), of Hefner & Eberspacher, of Mattoon, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Leon Mentzer appeals from the trial court's grant of a

directed verdict in favor of plaintiff City of Mattoon (Mattoon). On appeal, defendant contends (1) the trial court failed to make the proper finding necessary for a directed verdict, (2) his sentence for indirect civil contempt was improper, and (3) the trial court erred by invoking quasi *in rem* jurisdiction. We affirm.

In 1990, defendant and his wife Mary purchased the property in question, 1701-1701$^1$/$_2$ DeWitt Avenue, Mattoon, Illinois, from the estate of the Hansens, an elderly couple who had previously occupied the premises. The property passed directly from the Hansens' estate to a land trust, with the bank as legal titleholder and the Mentzers as beneficiaries. Since 1968, the building at that location had been used as a multiple-family dwelling in apparent violation of the single-family zoning restriction on the property. Prior to defendant's ownership, the property was tied up in probate for 14 months, during which time it was not used as a duplex.

In 1991, Mattoon filed a complaint against defendant Leon Mentzer for the alleged use of the premises in contravention of a zoning ordinance prohibiting multiple-family dwellings in that area. Mattoon Zoning Ordinance 88—4580 § VII(L)(2) (1988). Defendant settled with the city, signing a consent agreement in which he agreed to "abandon the alleged use of the premises *** as a two-family dwelling." In 1993, acting on a neighbor's complaint stating the premises was still being operated as a duplex, Mattoon filed this suit and a petition to show cause why defendant should not be held in civil contempt for violating the prior consent order.

Much evidence was produced at trial showing the property was being operated as a duplex at the time of the complaint. An exterior staircase led to the upstairs part of the building. Two mailboxes were located at the dwelling. The local mail carrier could not recall the names of the tenants at the two addresses because there had been "so many people in and out of that place." The residence had two electric meters installed. One neighbor testified he observed different people living in the two "apartments." While one of defendant's employees was living at the downstairs location, two other people lived upstairs. Defendant admitted at trial he continued to allow the property to be used as a two-family residence despite the previous order.

Evidence was also presented as to defendant's management or ownership of the duplex at the time in question. Defendant was observed going in and out of the "apartments" with cleaning materials. Mike Davis testified he lived at the downstairs location while working for defendant and rent was deducted from his paycheck. Defendant had keys to the location and would "show" the "apartments." Kathy Knifley, an employee of defendant's, collected rent checks on

defendant's behalf from residents at the duplex. Knifley was paid by Jramb and Associates, a corporation owned and operated by defendant. As noted before, defendant and his wife were listed on the land trust agreement with the bank.

Defendant testified on his own behalf. Defendant claimed he has owned no interest in the disputed property since 1990. Defendant testified he had called the trust department of the bank in 1990 and requested the forms necessary to assign his interest. According to defendant, he assigned his interest at that time to his wife. Defendant also claimed Jramb and Associates had taken over all management responsibilities for rental properties. However, Janet Grove, a trust officer who handled defendant's land trust at the bank, did not recall defendant having called to request the forms to assign his beneficial interest to his wife. The bank was aware of no assignment of interest related to this property, and the failure to notify the bank of an assignment would have been a violation of a security agreement the Mentzers had with the bank. Under this agreement, the Mentzers had borrowed $20,000 and assigned their beneficial interest to the bank as collateral, much like a mortgage. When asked about the location of the assignment papers on cross-examination, defendant "imagine[d] they're probably in the safety deposit box." When asked why he did not bring them to court, defendant "didn't think that there was any need for those [papers]." Defendant's wife did not testify on defendant's behalf.

Following the close of all evidence, the trial judge directed a verdict in favor of Mattoon. The court found defendant to be in "willful and contumacious violation" of the previous consent order and cited him for indirect civil contempt. Defendant's sentence of 90 days in jail was stayed, and the issuance of mittimus was stayed for two years on the condition defendant, his wife, or anyone in privity with defendant maintain the premises for single-family use only. In addition, defendant was fined $350 plus costs and attorney fees. This appeal ensued.

■ Defendant contends the trial court failed to make the proper finding necessary for a directed verdict. The trial court found "after considering all of the evidence in a light most favorable to the Defendant, that a fair and impartial jury could not find in favor of the Defendant." A motion for a directed verdict should be granted when, viewing all the evidence in the light most favorable to the party opposing the motion, the evidence "so overwhelmingly favors the movant that no contrary verdict based upon that evidence could ever stand." *Walter v. Carriage House Hotels, Ltd.*, 164 Ill. 2d 80, 86, 646 N.E.2d 599, 602 (1995). Defendant asserts the standard enunciated by

the trial court is not equivalent to the latter standard; as he has cited no authority or argument in support, this argument has been waived. 155 Ill. 2d R. 341(e)(7); *People v. $1,124,905.00 United States Currency*, 269 Ill. App. 3d 952, 956, 647 N.E.2d 1028, 1031 (1995), *appeal allowed*, 163 Ill. 2d 578 (1995). Regardless of waiver, defendant has failed to demonstrate how he was prejudiced by application of the erroneous standard. *Nika v. Danz*, 199 Ill. App. 3d 296, 314, 556 N.E.2d 873, 886 (1990); *In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 259 Ill. App. 3d 231, 241, 631 N.E.2d 1302, 1310 (1994).

In the interest of maintaining a uniform body of precedent (see *Hux v. Raben*, 38 Ill. 2d 223, 225, 230 N.E.2d 831, 832 (1967) (since appellate court is responsible for ensuring just results and maintaining "a sound and uniform body of precedent," these concerns "may sometimes override the considerations of waiver that stem from the adversary character of our system"), we note the trial court did, in fact, apply the wrong legal standard. Contrary to Mattoon's assertion that any difference between the two standards is an "insignificant semantic distinction," the Supreme Court of Illinois has expressed a preference for the latter standard stated, as opposed to the one used by the trial judge here. In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 509-10, 229 N.E.2d 504, 513 (1967), the supreme court delineated the standard to be applied in Illinois when ruling on or reviewing motions for directed verdicts and judgments *n.o.v.* After surveying all the standards employed in other states, the *Pedrick* court narrowed the field to the standard now applied (no contrary verdict could ever stand) and the standard employed by the trial judge in this case (when all reasonable men would agree—or, in more modern terms, when a fair and impartial jury could not find for the nonmovant). The *Pedrick* court then expressed a preference for the former standard over the latter. As the court noted in *Pedrick*:

"[T]here is at least a surface incongruity in a trial judge saying all reasonable men agree that the proof established [what the movant claims] when 12 jurors have just reached a contrary conclusion. And it seems even more incongruous for reviewing courts to so state when the trial judge and jury reached the opposite result, when the trial and reviewing courts disagree or the members of a reviewing court disagree among themselves that such is the case." *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513.

The court was dissatisfied with the "reasonable men would agree" standard because it was not "workable in practical application" for the above reasons. *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513. Thus, a distinction between the two standards does exist and the trial court did apply the incorrect standard in this case.

Defendant next claims the trial court's direction of the verdict in favor of Mattoon was erroneous, regardless of the standard employed. Defendant contends this court should review *de novo* the trial court's grant of a directed verdict. Mattoon disputes this standard of review, claiming "[a] trial court's decision to direct a verdict necessarily involves careful weighing of evidence and evaluation of credibility of witnesses" and thus should be accorded "substantial deference" on appeal. In ruling on a motion for a directed verdict, the trial court can neither weigh the evidence nor judge the credibility of witnesses. See *Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 512 (1992); *Landrum v. Gonzalez*, 257 Ill. App. 3d 942, 948, 629 N.E.2d 710, 715 (1994). Thus, at least for the reasons suggested by Mattoon, this court need not give "substantial deference" to the trial court's ruling on a directed verdict.

■ We hold review of a grant of a directed verdict is, in fact, *de novo*. We recognize there is some authority in Illinois to the contrary, *e.g.*, the fifth district decisions in *Johnson v. National Super Markets, Inc.*, 257 Ill. App. 3d 1011, 1015, 630 N.E.2d 934, 937 (1994), and *Boatmen's Bank v. Dowell*, 208 Ill. App. 3d 994, 1001, 567 N.E.2d 739, 743 (1991). Both cases seem to assert the standard of review on appeal cannot be *de novo* because the standard of review on appeal should be the same as that applied by the trial court. *Johnson*, 257 Ill. App. 3d at 1015, 630 N.E.2d at 937; *Boatmen's Bank*, 208 Ill. App. 3d at 1001, 567 N.E.2d at 743. Yet applying the same standard as below fits the definition of *de novo*: "[a]new; afresh; *a second time.*" (Emphasis added.) Black's Law Dictionary 435 (6th ed. 1990). This squares with *de novo* review of grants of summary judgment; there is little difference between looking *de novo* for a substantial factual dispute and a genuine issue of material fact.

We also note the *Johnson* court insisted the appropriate standard was not *de novo* since the appellate court "will not reweigh the evidence." *Johnson*, 257 Ill. App. 3d at 1015, 630 N.E.2d at 937. However, *neither* the trial court *nor* the appellate court is supposed to *weigh* the evidence—that is the function of the jury from whom the verdict is being taken. *Spidle v. Steward*, 79 Ill. 2d 1, 10, 402 N.E.2d 216, 220 (1980). Therefore, we review *de novo* the trial court's grant of the directed verdict in favor of Mattoon.

■ A directed verdict is improper where "there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512; *Pedrick*, 37 Ill. 2d at 504, 229 N.E.2d at 510 (noting

the Illinois Constitution preserves "the right of the parties to have a substantial factual dispute resolved by the jury, for it is here that assessment of the credibility of witnesses may well prove decisive"). Black's Law Dictionary defines "weight of evidence" as "the inclination of the greater amount of *credible* evidence *** to support one side of the issue rather than the other. *** Weight is not a *question of mathematics*, but depends on its effect in *inducing belief*." (Emphasis added.) Black's Law Dictionary 1594 (6th ed. 1990). The court must consider the evidence, and any inferences which may thereby be drawn, in the light most favorable to the nonmoving party. *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512. Direction of a verdict should not be automatic simply because the nonmovant introduces no evidence in his favor or chooses not to dispute facts. *Athey v. City of Peru*, 22 Ill. App. 3d 363, 369-70, 317 N.E.2d 294, 299 (1974). Conversely, the nonmovant does not create a substantial fact dispute merely by producing evidence in his favor—such evidence which "when viewed alone may seem substantial, does not always, when viewed in the context of all of the evidence, retain such significance." *Pedrick*, 37 Ill. 2d at 504, 229 N.E.2d at 510. Review of a directed verdict necessarily involves consideration of the applicable burden of proof, since "[w]hat may be 'significant' or 'substantial' evidence in a case involving a preponderance standard may fall wide of the mark where the burden of proof is clear and convincing." *Williams v. Chicago Osteopathic Health Systems*, 274 Ill. App. 3d 1039, 1047-48, 654 N.E.2d 613, 618-19 (1995) (distinguishing the "weighing" of evidence done by a jury from the "disciplined evaluation" performed by a court ruling on a directed verdict).

 Viewing all of the evidence in a light most favorable to defendant in this case yields little in defendant's favor. Defendant's only evidence at trial consisted of his own testimony he had assigned his interest in his property to his wife in 1990. Viewing this evidence in its best light, as we must, and balancing it against the evidence presented by Mattoon fail to demonstrate a *substantial* factual dispute in this case. Use of the property as a duplex was never disputed. The only dispute arose over whether defendant owned any interest in the disputed property, the relevance of which is called into question by the fact the Mattoon zoning ordinance, similar to other city zoning codes, does not require "ownership" as a condition of culpability. Nevertheless, the evidence of ownership by defendant was overwhelming.

In addition, the burden of proof in this case makes it less likely defendant's slim evidence, even when viewed in its best light, could have established a substantial factual dispute. A clear preponderance

of the evidence is required to prove a violation of a municipal ordinance, not proof beyond a reasonable doubt. *City of Chicago v. Joyce*, 38 Ill. 2d 368, 373, 232 N.E.2d 289, 291 (1967). The higher the burden of proof for a party moving for a directed verdict, the less evidence is required of the nonmovant to avoid the motion. Here, there was minimal evidence and a low burden of proof, thereby justifying the taking of the verdict from the jury.

On appeal, defendant drops the issue of ownership and, instead, contends there was a "genuine issue of material fact" as to whether his use of the property was in violation of the Mattoon zoning ordinance. He claims there was a factual dispute as to whether the nonconforming use of the premises was ever discontinued. The Mattoon zoning ordinance permitted the use of property, nonconforming at the time of enactment, to continue, unless such nonconforming use abated for over one year, in which case all subsequent use was to be in conformity with the ordinance as enacted. Mattoon Zoning Ordinance 88—4580 § 7(L)(2) (1988). Although there was uncontradicted evidence the premises was not occupied as a duplex for 14 months, defendant contends "the jury was under no obligation to accept this evidence." Mattoon responds principles of *res judicata* and collateral estoppel bar defendant's argument on this point, given the prior consent decree.

The Illinois courts are generally in agreement a consent decree operates to the same extent for *res judicata* purposes as a judgment entered after contest and is conclusive with respect to the matters which were settled by the judgment or decree. *Adams v. Adams*, 398 Ill. 581, 587, 76 N.E.2d 495, 498-99 (1947); *People ex rel. Stead v. Spring Lake Drainage & Levee District*, 253 Ill. 479, 491, 97 N.E. 1042, 1047 (1912); *Arnett v. Environmental Science & Engineering, Inc.*, 275 Ill. App. 3d 938, 944, 657 N.E.2d 668, 672-73 (1995); *Elliott v. LRSL Enterprises, Inc.*, 226 Ill. App. 3d 724, 728, 589 N.E.2d 1074, 1077 (1992); *Barth v. Reagan*, 146 Ill. App. 3d 1058, 1064, 497 N.E.2d 519, 523 (1986); *First National Bank v. Whitlock*, 327 Ill. App. 127, 139, 63 N.E.2d 659, 664 (1945); *contra Kinzer v. City of Chicago*, 169 Ill. App. 3d 447, 458, 523 N.E.2d 919, 926 (1988); *People ex rel. Nelson v. Joliet Trust & Savings Bank*, 315 Ill. App. 11, 14, 42 N.E.2d 90, 92 (1942). If consent decrees and settlements were not given this effect, their purpose would be frustrated, since all "would be subject to the possibility of future litigation and double recovery." *Elliott*, 226 Ill. App. 3d at 728, 589 N.E.2d at 1077. Parties to a consent decree may assert the judgment for *res judicata* purposes because this doctrine prohibits litigation of an issue which could have been raised in the first proceeding, as well as those which were actually litigated previously. *Arnett*, 275 Ill. App. 3d at 944, 657 N.E.2d at 672-73.

As to the issue of whether defendant's use of the premises was nonconforming, we find defendant's claim is barred by principles of *res judicata*. As part of the consent decree of May 6, 1992, defendant agreed to abandon his nonconforming use of the duplex as a two-family dwelling. Even if this issue had not been *res judicata* due to the prior consent decree, there was no substantial factual dispute to go to the jury. The evidence was uncontradicted the use of the property as a duplex was abandoned for 14 months while the property was tied up in probate, thus triggering applicability of the zoning code as most recently enacted.

■ Defendant next contends his sentence for indirect civil contempt was improper because the purging conditions of the stay were not exclusively within his control. In particular, defendant claims he was not given the "keys to his own [jail] cell," since the trial judge stayed defendant's sentence based upon the future conduct of defendant's wife and others in privity with defendant.

A civil contempt order is coercive, not punitive, and is designed to bring a defendant's conduct in line with a prior court order. A party held in civil contempt must be afforded the "keys to his cell," such that he may purge himself of contempt after he has been imprisoned or to avoid future imprisonment. *In re Marriage of Logston*, 103 Ill. 2d 266, 289, 469 N.E.2d 167, 177 (1984). Implicitly, the civil contemnor must possess the power and ability to effectuate the conditions by which he avoids incarceration—"contempt will not lie when the alleged contemnor, through no fault of his own, is in a position where he cannot comply with the [previous] order of the court." *In re Estate of Shlensky*, 49 Ill. App. 3d 885, 895, 364 N.E.2d 430, 438 (1977); see also *Pryweller v. Pryweller*, 218 Ill. App. 3d 619, 633, 579 N.E.2d 432, 442 (1991). However, the contemnor bears the burden of demonstrating a legitimate inability to comply with the imposed terms. See *Logston*, 103 Ill. 2d at 285, 469 N.E.2d at 175; *Sanders v. Shephard*, 185 Ill. App. 3d 719, 733, 541 N.E.2d 1150, 1159 (1989); *Shlensky*, 49 Ill. App. 3d at 895, 364 N.E.2d at 438.

Defendant failed to meet this burden at trial. The same evidence which was inadequate to show defendant was not operating the duplex in contravention of the original consent decree is equally as inadequate to show defendant cannot prevent such use in the future. The only evidence in defendant's favor was his own testimony. His attempt to show he was but a bystander in the operation of the property in question stood against strong evidence he was both the managing agent and owner of the duplex. This evidence was inadequate to avoid a finding of contempt, where Mattoon had the burden of proof; certainly, then, it was insufficient to show defendant's inability to

meet the purging conditions, where defendant, rather than Mattoon, bore the burden of proof.

Defendant's assertion he does not have the power to prevent nonconforming use of the duplex in the future rests upon the assumption defendant *currently* does not own or manage the duplex, a question of fact decided in Mattoon's favor by the trial court. A finding of contempt is a question of fact which will not be disturbed on appeal unless it is against the manifest weight of the evidence or reflects an abuse of discretion on the part of the trial court. *Logston*, 103 Ill. 2d at 286-87, 469 N.E.2d at 176. Once such a finding of fact has been made against a contemnor, the contemnor cannot be heard to complain the same facts now render the purging conditions improper. Claims such as defendant's have been rejected, with the courts allowing a contemnor's incarceration to continue despite his pleas he does not possess the keys to his cell. Compare *Sanders*, 185 Ill. App. 3d at 732, 541 N.E.2d at 1158 (finding permissible defendant's incarceration for 19 months for failure to return mother's child in violation of civil contempt order, despite defendant's claims he did not know the child's whereabouts), and *Sunset Travel, Inc. v. Lovecchio*, 113 Ill. App. 3d 669, 678, 447 N.E.2d 891, 897 (1983) (finding permissible a jail sentence of 30 days stayed upon production of disputed airline tickets, where defendant claimed no knowledge of their location), with *Pryweller*, 218 Ill. App. 3d at 633, 579 N.E.2d at 442 (petitioner did not hold keys to her cell where purging condition required specific actions by a doctor who had specifically refused to have any involvement in the case, who had written the court and informed it he was completely unable to provide the specified information, and who had told the court he would be on vacation during the time period relative to the contempt).

We do note there is a slight problem with the contempt order, a problem about which defendant does not complain. A civil contemnor must be allowed to purge himself of contempt even after he has been incarcerated. Thus, a definite jail term, with no further means of purging the contempt, is improper where only civil contempt has been found. *Logston*, 103 Ill. 2d at 289, 469 N.E.2d at 177 (where defendant was sentenced to no more than six months in jail if he failed to pay an arrearage within 30 days, sentence was improper since order did not provide for defendant's potential release if he paid the arrearage *after* being incarcerated); *Continental Illinois National Bank v. Brach*, 71 Ill. App. 3d 789, 793, 390 N.E.2d 373, 376 (1979); *Sullivan v. Sullivan*, 16 Ill. App. 3d 549, 552, 306 N.E.2d 604, 606 (1973). Such a determinate sentence would raise constitutional concerns, inasmuch as it "seems to represent a present adjudication of guilt for

a crime to be committed in the future." *Reina v. United States*, 364 U.S. 507, 515, 5 L. Ed. 2d 249, 256, 81 S. Ct. 260, 265 (1960) (Black, J., dissenting, joined by Warren, C.J.); *Shillitani v. United States*, 384 U.S. 364, 370 n.6, 16 L. Ed. 2d 622, 627 n.6, 86 S. Ct. 1531, 1536 n.6 (1966) (noting a court "may *** impose a determinate sentence *which includes a purge clause.* *** It raises none of the problems surrounding a judicial command that unless [the contemnor obeys the court order] he will be imprisoned for a term of years" (emphasis added)); but *cf. People v. Doherty*, 165 Ill. App. 3d 630, 637-38, 518 N.E.2d 1303, 1307 (1988) (although defendant failed to appeal from contempt finding, definite term of imprisonment does not convert civil contempt to criminal contempt). The trial court in the present case sentenced defendant to 90 days' incarceration if he should violate the court order. However, we are sure the trial court, in the event defendant is alleged to have violated the conditions of the stay of the mittimus, will give defendant the opportunity to purge his contempt by discontinuing his contemptuous conduct if he is eventually jailed.

■ Finally, defendant claims the trial court erred by invoking quasi *in rem* jurisdiction. While the trial court erroneously referred to this case as one involving quasi *in rem* jurisdiction, defendant has failed to show how he was prejudiced by the court's erroneous remarks. See *In re Air Crash Disaster*, 259 Ill. App. 3d at 241, 631 N.E.2d at 1310.

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

STEIGMANN and GARMAN, JJ., concur.