THE CITY OF URBANA, Plaintiff-Appellee, v. ANDREW N.B., Defendant-Appellant.

Fourth District    No. 4—01—0773

Opinion filed November 20, 2002.

Stephen Holz, Assistant City Attorney, of Urbana, for appellee.

Daniel D. Yuhas and Jenifer L. Johnson, both of State Appellate Defender's Office, of Springfield, for appellant.

JUSTICE APPLETON delivered the opinion of the court:

The city attorney of Urbana, Illinois, filed a complaint against defendant, Andrew N.B., alleging he had committed theft in violation of chapter 15, section 32(a)(1), of the Urbana Code of Ordinances. Urbana Code of Ordinances, ch. 15, § 32(a)(1) (eff. September 1, 1980). Defendant, 12 years old and *pro se,* pleaded guilty. The maximum punishment under the ordinance was a $75 fine. Urbana Code of Ordinances, General Provisions, § 1—18 (eff. September 1, 1980). The trial court placed defendant under its supervision for 12 months, subject to conditions. Defendant violated two of the conditions, and the city filed a petition for adjudication of indirect criminal contempt. The trial court appointed an attorney for defendant and, after an evidentiary hearing, granted the city's petition. For the contempt, the trial court sentenced defendant to 12 months' probation and 180 days' detention, 8 days to be served immediately and the rest subject to further hearings on remission.

All of the proceedings, from the initial prosecution to the finding of criminal contempt, unfolded "without reference to the procedures set out in" article V of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/5—101 through 5—915 (West 2000)). See 705 ILCS 405/5—125 (West 2000). Defendant appeals, arguing (1) section 5—125 violated his right to equal protection and due process, (2) the city should have filed its petition for contempt as a new criminal case, and (3) the sentence is too severe, considering his age and lack of a prior criminal record. We disagree with all three contentions and affirm the trial court's judgment.

## I. BACKGROUND

The complaint alleged that on April 11, 2001, at 1109 North Coler Avenue in Urbana, defendant "knowingly exercised unauthorized control over" a $100 bill belonging to someone else. Appearing with his father, defendant pleaded guilty on May 3, 2001. Immediately afterward, that same day, the trial court entered its order of supervision, which included a list of conditions. Two of the conditions were that defendant "[o]bey all household rules" and "attend school on time each and every day *** unless properly excused."

On May 24, 2001, the city filed its petition for adjudication of indirect criminal contempt, alleging: (1) defendant was absent from school, without excuse, on May 4, 7, and 8, 2001, and (2) defendant's mother "listed [him] as a runaway" on or about May 8, 2001. The city "waive[d] any sentence of incarceration that equal[ed] or exceed[ed] six months, or a fine of more than $500.00."

Defendant's court-appointed attorney filed a motion to dismiss the petition pursuant to section 114—1(a)(6) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114—1(a)(6) (West 2000)) on the ground that the trial court lacked subject-matter jurisdiction. In his motion, defendant argued that section 5—125 required the trial court to follow the procedures in the Juvenile Court Act if there was a possibility of detention (see 705 ILCS 405/5—125 (West 2000) ("except that any detention[ ] must be in compliance with this [a]rticle")), including an adjudicatory hearing to determine whether defendant should be made a ward of the court (see 705 ILCS 405/5—705(1) (West 2000)). Until the trial court declared him a ward of the court, it had no jurisdiction to order his detention, defendant argued. The trial court disagreed because its inherent power to enforce its orders did not depend on the Juvenile Court Act. See *In re G.B.*, 88 Ill. 2d 36, 41, 430 N.E.2d 1096, 1098 (1981).

In his brief, defendant admits he violated conditions of the supervision. Therefore, we need not recapitulate the testimony in the

evidentiary hearing on July 25, 2001. At the conclusion of the hearing, the trial court found defendant to be "in indirect criminal contempt of court" and scheduled the sentencing hearing for July 30, 2001.

On July 30, 2001, prior to sentencing, the trial court heard defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Observing that the motion made essentially the same arguments as the motion to dismiss, the trial court denied it and proceeded to the hearing on sentencing. The city stated it had no evidence in aggravation. Defendant presented, as evidence in mitigation, a letter of apology from himself to his grandmother, apologizing for stealing the money from her. (One of the conditions, in the order of supervision, was that defendant "[w]rite a letter of apology to *** Dorothy Mays" of 1109 North Coler Avenue.)

According to the sentencing report, defendant was born on June 8, 1988, making him 13 years old. His parents were divorced, and he resided with his mother. The mother reported that defendant had a "serious problem with his temper," particularly when she "nag[ged]" him to do chores. When angry, he punched holes in walls or hit his younger siblings. He had pushed his mother, attempted to choke her, and threatened to hit her. He had left home through a window after his mother went to bed, and she had reported him as a runaway several times. The mother considered him to be "out of her control." Defendant had no prior involvement with the courts or police. He admitted experimenting with marijuana in May 2001 and drinking alcohol in June 2001. He was on medication for hyperactivity, but the doctor did not think increasing the dosage would help him and recommended counseling instead.

The trial court considered defendant's most recent report card, showing he had received F's in every subject except chorus, in which he had received a "pass," and physical education and "resource," in which he had received D's. Defendant's letter of apology to his grandmother revealed he could not spell such words as "sorry," "learn," "lesson," "never," and "again."

The trial court put defendant on probation for 12 months, subject to these conditions, among others: that he (1) take all prescribed medications; (2) undergo all treatment and counseling the court services department recommended, including "anger control"; (3) go to school every day it is in session and "try in school"; and (4) obey his mother. In addition, the trial court sentenced him to 180 days in the Champaign County Juvenile Detention Center, 8 days to be served immediately, from July 30 to August 6, 2001, and the balance subject to remission.

In his notice of appeal, filed on September 4, 2001, defendant ap-

peals from both the order of May 3, 2001 (the conviction of theft), and the order of July 30, 2001 (the sentence for contempt). He filed a motion for leave to file a late notice of appeal, which we granted.

## II. ANALYSIS

### A. Equal Protection

■ Under section 5—520 of the Juvenile Court Act (705 ILCS 405/5—520 (West 2000)), the State's Attorney may file a petition that the court adjudge a minor a ward of the court on the ground that the minor is delinquent. A "minor" is "a person under the age of 21 years subject to this Act." 705 ILCS 405/5—105(10) (West 2000). A "delinquent minor" is a minor who, "prior to his or her 17th birthday[,] has violated or attempted to violate *** any federal or [s]tate law[ ] [or] county or *municipal ordinance*." (Emphasis added.) 705 ILCS 405/5—105(3) (West 2000).

■ Section 5—101(3) of the Juvenile Court Act (705 ILCS 405/5—101(3) (West 2000)) provides: "In *all* procedures under this [a]rticle, minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors." (Emphasis added.)

■ Section 5—125 of the Juvenile Court Act provides:

"Any minor alleged to have violated a *** municipal *** ordinance[ ] *may* be prosecuted for the violation and[,] if found guilty[,] punished under any *** ordinance relating to the violation, without reference to the procedures set out in this [a]rticle, except that any detention[ ] must be in compliance with this [a]rticle." (Emphasis added.) 705 ILCS 405/5—125 (West 2000).

Defendant reasons that if a minor violates a municipal ordinance, section 5—125 allows two alternative courses of action: (1) the State's Attorney can file a petition for a finding of delinquency and an adjudication of wardship pursuant to section 5—520 of the Juvenile Court Act, or (2) the city can file a complaint for violation of the ordinance, as it would do against an adult defendant. Whether the minor receives, as section 5—101(3) says, "all the procedural rights of adults in criminal proceedings" (705 ILCS 405/5—101(3) (West 2000)) depends on which course of action is taken. If the city files a complaint, the minor is in the same position as an adult (see *Village of Glen Ellyn v. Fujinaga*, 190 Ill. App. 3d 584, 587, 546 N.E.2d 816, 818 (1989)): the minor will have no right to an attorney if the punishment is merely a fine (*City of Danville v. Clark*, 63 Ill. 2d 408, 412-13, 348 N.E.2d 844, 846 (1976)), and the standard of proof will be proof by a clear preponderance of the evidence (*City of Mattoon v. Mentzer*, 282 Ill. App. 3d 628, 634-35, 668 N.E.2d 601, 605 (1996)). If, on the other

hand, the State's Attorney files a petition under the Juvenile Court Act, the minor will have the right to an attorney, and the standard of proof will be proof beyond a reasonable doubt. *In re A.G.*, 195 Ill. 2d 313, 318, 746 N.E.2d 732, 736 (2001).

■ "The essential test of equal protection is whether [the] government deals with similarly situated individuals in a similar manner." *In re Adoption of K.L.P.*, 198 Ill. 2d 448, 466, 763 N.E.2d 741, 752 (2002). The right of equal protection does not forbid the government from enacting legislation that draws distinctions between different categories of people; rather, it forbids the government from enacting legislation that puts people into different categories on the basis of criteria wholly unrelated to the purpose of the legislation. *Nevitt v. Langfelder*, 157 Ill. 2d 116, 124, 623 N.E.2d 281, 284-85 (1993).

Defendant argues section 5—125 violated his right to equal protection because it treated him less favorably than a minor who was charged with theft but whom the State's Attorney chose to prosecute under the Juvenile Court Act. Both he and the other minor would be similarly situated in that they both were accused of theft, but while defendant had "virtually no rights," the other minor had all the rights of a criminal defendant.

The parties agree that we must ask whether there is a rational basis for the classification of which defendant complains. See *Illinois Housing Development Authority v. Van Meter*, 82 Ill. 2d 116, 120, 412 N.E.2d 151, 153 (1980). We ask a deferential question of law: whether the classification is rationally related to the stated goal of the legislation, keeping in mind that "legislation carries a strong presumption of constitutionality"; and if one can reasonably conceive any reason to justify the classification, we must uphold it. *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 324, 664 N.E.2d 1024, 1029 (1996). " 'The equal protection clause does not deny [s]tates the power to treat different classes of persons in different ways.' " *People v. Mathey*, 99 Ill. 2d 292, 296, 458 N.E.2d 499, 501 (1983), quoting *People v. Bradley*, 79 Ill. 2d 410, 416, 403 N.E.2d 1029, 1031 (1980).

Assume there are two minors, both accused of stealing something in Urbana. Nothing has been filed yet. The two minors are in the same situation, and the law treats them precisely the same. Either of two things can happen to each minor: (1) the State's Attorney can file a petition under section 5—520, or (2) the city can file a complaint for violation of the ordinance.

■ Now assume the State's Attorney has filed a delinquency petition against one minor and the city has filed an ordinance-violation complaint against the other. The two minors are no longer in the same situation. Unlike the minor in the city's case, the minor in the juvenile

case faces a possibility of detention for up to 30 days (705 ILCS 405/ 5—710(1)(a)(v) (West 2000)), removal from the custody of his or her parents or guardians (705 ILCS 405/5—710(1)(a)(ii) (West 2000)), and placement into the custody of some other person or agency (705 ILCS 405/5—740(1)(a), (1)(c), (1)(e) (West 2000)). One of the purposes of the Juvenile Court Act is to assure the minor of "procedural rights" commensurate with the proposed remedies in the proceedings. See 705 ILCS 405/1—2(3)(a) (West 2000). The legislature could have reasonably concluded that the minor in juvenile court should have the right to appointed counsel and the other minor should not, because the minor in juvenile court faces weightier potential consequences. Section 5—125 does not violate defendant's right to equal protection.

## B. Due Process

■ Defendant next argues that section 5—125 is unconstitutional because it allowed the trial court to find him guilty of theft and put him under supervision without first affording him the due process of law. Defendant reasons that a minor, charged in juvenile court with violating an ordinance, would have the right to an attorney (see 705 ILCS 405/5—101(3) (West 2000)), even though the ordinance itself provided only for the imposition of a fine, whereas an adult, charged with violating the same ordinance, would have no right to an attorney (*Clark*, 63 Ill. 2d at 413, 348 N.E.2d at 846). The legislature gave minors more procedural protections than adults would have had under the same circumstances because it believed " 'fundamental fairness— the touchstone of due process' " (*People v. Gazelle*, 165 Ill. 2d 93, 98, 649 N.E.2d 381, 383 (1995) (Nickels, J., concurring), quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790, 36 L. Ed. 2d 656, 666, 93 S. Ct. 1756, 1763 (1973))—so required. Therefore, defendant concludes, "[f]undamental fairness dictates that minors prosecuted in municipal[-] ordinance cases are entitled to representation by counsel."

There are two fallacies in defendant's reasoning. First, it does not follow that just because the legislature bestowed rights in a statute, due process required the legislature to do so. The legislature can be more generous than the state and federal constitutions. See, for example, *People v. Dass*, 226 Ill. App. 3d 562, 565, 589 N.E.2d 1065, 1067 (1992) (an Illinois statute provided a broader right to counsel than the sixth amendment). Second, the minor and adult are not similarly situated. The legislature provided the minor the right to an attorney not simply because of the minor's youth (or else the legislature would have given minors the right to appointed counsel in *all* cases) but because, unlike the adult, the minor faces the possibility of detention, a change of custody, and a new guardian.

Although the city prosecuted defendant for theft—an offense that, as defendant says, was "manifestly criminal in nature"—the trial court did not sentence him to incarceration for that offense, and incarceration was not even a possibility under the ordinance. Nevertheless, defendant argues "the nature of the charge *** dictated that [he] should have been appointed counsel." He cites no authority for that proposition. The sixth amendment bestows a right to counsel only in cases in which the court actually sentenced the defendant to imprisonment. *Argersinger v. Hamlin*, 407 U.S. 25, 40, 32 L. Ed. 2d 530, 540, 92 S. Ct. 2006, 2014 (1972). It is irrelevant whether the State labels the offense as "criminal"; the question is whether "imprisonment actually occurs." *Argersinger*, 407 U.S. at 38, 32 L. Ed. 2d at 539, 92 S. Ct. at 2013. Supervision was not imprisonment. The trial court appointed counsel for defendant before finding him in criminal contempt and sentencing him to detention. Defendant cites no authority to support the proposition that the due process clause required the appointment of counsel when the sixth amendment did not. He received the due process of law.

## C. The Sentence

■ Defendant calls his sentence "outrageous." We disagree with that characterization. We give the trial court's sentencing decision great deference and will not interfere unless the trial court abused its discretion. *People v. Milligan*, 327 Ill. App. 3d 264, 269, 764 N.E.2d 555, 560 (2002). Of the 180 days' detention, defendant had to serve only 8 days, and because the remaining 172 days were subject to remission, it was entirely within his power to avoid serving them. All he had to do was obey the trial court's probationary order, which consisted mostly of requirements that the law and society imposed on all 13-year-olds (*e.g.*, go to school, try in school, obey household rules, take prescribed medication, do not break the law). The sentence was not onerous, considering that, except for the eight days, the key to liberty lay in defendant's own hand. We find no abuse of discretion in the sentence.

## D. Jurisdiction in the Contempt Proceedings

■ Citing our decision in *People v. Budzynski*, 333 Ill. App. 3d 433, 775 N.E.2d 275 (2002), defendant argues "the indirect criminal contempt proceedings were fatally flawed" because "the [c]ity *** did not file the contempt petition as a separate case, but simply proceeded under the ordinance-violation case." *Budzynski* is distinguishable because, in that case, the defendant's term of probation had expired when the State filed its petition for a finding of criminal contempt. *Budzynski*, 333 Ill. App. 3d at 437, 775 N.E.2d at 278. The trial court

had lost jurisdiction when the probationary term expired. *Budzynski*, 333 Ill. App. 3d at 439, 275 N.E.2d at 281. Therefore, we held the State should have "file[d] its petition as a new criminal case" and "personally serve[d] defendant" so that the trial court would have regained jurisdiction. *Budzynski*, 333 Ill. App. 3d at 439, 275 N.E.2d at 281.

In the present case, the period of supervision had not expired when the city filed its petition for a finding of criminal contempt. Section 5—6—3.1(e) of the Unified Code of Corrections (730 ILCS 5/5—6—3.1(e) (West 2000)) provides: "At the conclusion of the period of supervision, if the court determines that the defendant has successfully complied with all the conditions of supervision, the court shall discharge the defendant and enter a judgment dismissing the charges." Until then, judgment is deferred. 730 ILCS 5/5—6—3.1(d) (West 2000). It follows that until the end of the period of supervision, the trial court retains personal and subject-matter jurisdiction. Otherwise, the trial court would have no jurisdiction to enter an order at the end of the period.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and STEIGMANN, JJ., concur.